IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CAPITOL LAKES, INC.,[1] | § | Case No. 16-10158 |
| | § | |
| Debtor. | § | Hon. Robert D. Martin |

**MOTION OF DEBTOR FOR AN ORDER AUTHORIZING (I) CONTINUED
USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) MAINTENANCE
OF EXISTING BANK ACCOUNTS, (III) CONTINUED USE OF EXISTING
BUSINESS FORMS, AND (IV) INTERIM WAIVER OF
11 § U.S.C. 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS**

Capitol Lakes, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed attorneys, hereby moves (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 345, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing (a) the Debtor to (i) continue to use its existing cash management system, (ii) maintain its existing bank accounts, and (iii) continue to use its existing business forms, and (b) an interim waiver of the deposit and investment requirements of section 345(b) of the Bankruptcy Code. In support of this Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference from the United States District Court for the Western District of Wisconsin dated June 12, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[1] The debtor in this chapter 11 case, along with the last four (4) digits of its taxpayer identification number, is: Capitol Lakes, Inc. (2320).  The mailing address of the debtor, solely for purposes of notices and communications, is: 333 W. Main Street, Madison, WI 53703.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 345, 1107 and 1108.

## BACKGROUND

4. On January 20, 2016 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6. No trustee, examiner or committee of creditors has been appointed in this case.

7. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating this chapter 11 filing, is set forth in detail in the *Declaration of Tim Conroy in Support of Chapter 11 Petition and First Day Motions of Capitol Lakes, Inc.* (the "Conroy Declaration"), filed contemporaneously herewith and incorporated herein by reference.

### The Debtor's Cash Management System

8. In the ordinary course of business, the Debtor uses a centralized cash management system (the "Cash Management System"). The Cash Management System allows for funds to be collected into one operating account (the "Operating Account") and thereafter those funds are either paid out directly for operating expenses or transferred to other accounts for various purposes, including payroll, savings and investment. A flow chart depicting the Debtor's Cash Management System is attached hereto as Exhibit A. The Cash Management System is used to fund day-to-day operations, including payments to vendors and other accounts payable.

2

**A.    The Cash Management Bank Accounts**

9.    As of the Petition Date, the Cash Management System utilized a total of four (4) bank accounts (collectively, the "Cash Management Bank Accounts") with US Bank, National Association ("US Bank") for collections, payroll, savings and operating expenses. The Cash Management Bank Accounts are described in detail below:

- (A) **Operating Account (Account No. *7700):** The Operating Account is funded from the Government Receivables Account, insurance payments and resident payments (entrance fees, monthly service charges, and daily rates). The Operating Account is used to fund the Payroll Account and for accounts payable disbursements. Daily deposits in excess of $100,000 are swept into the Business Savings Sweep. To the extent the funds in the Operating Account go below $0, the balance required to bring the account back to $100,000 is swept from the Business Savings Sweep into the Operating Account. The Business Saving Sweep can only be swept to the Operating Account six times per month before penalties are incurred.

- (B) **Business Savings Sweep (Account No. *7840):** Funds in the Operating Account are swept into the Business Savings Sweep when daily deposits exceed $100,000. To the extent the funds in the Operating Account go below $0, funds from the Business Savings Sweep transfer into the Operating Account. The Business Saving Sweep can only be swept to the Operating Account six times a month before penalties are incurred.

- (C) **Payroll Account (Account No. *7718):** The Payroll Account is a zero balance account funded from the Operating Account, which is used to pay the Debtor's payroll expenses. This includes payroll taxes for all employees that are employed directly by the Debtor, as well as certain payroll processing fees. The Payroll Account is also funded from the Operating Account when the account balance drops below zero as items clear (not necessarily daily). Taxes and garnishments are drafted of the Payroll Account the day before the payroll pay date. Direct debits are drafted on the pay date.

- (D) **Government Receivables Account (Account No. *6223):** The Government Receivables Account is funded from Medicare payments. All Medicare payments for any residents or public admissions that are billed to Medicare are received in this account. A book transfer is performed on a monthly basis (or when funds are needed) to move these funds to the Operating Account.

3

**B.    The Investment Accounts**

10.    The Debtor also maintains various investment accounts (the "Investment Accounts") with UBS Financial Services Inc. ("UBS," and together with US Bank, the "Banks"). The Investment Accounts are managed by Pacific Retirement Services, Inc. ("PRS"), the Debtor's sole member, which provides various management and support services to the Debtor pursuant to a Management and Support Services Agreement, dated as of March 18, 2014, between PRS and the Debtor.  The Investment Accounts are maintained in accordance with an investment policy statement, which provides certain guidelines regarding, among other things, diversity, risk and liquidity (the "Investment Policy Statement").[2]  The Investment Accounts, and the balance of each as of December 31, 2015, are listed below:

(A) **Holding Account – Cash (Account No. *806A):**  Cash balance of $1,336.29.  Any withdrawal from or deposit to the Investment Accounts goes through this Holding Account.

(B) **Equities – Common Stock (Account No. *906A):**  Equity balance of $337,116.37; cash balance of $7,864.55; total balance of $344,980.92.

(C) **Equities – Common Stock (Account No. *916A):**  Equity balance of $327,601.13; cash balance of $8,585.89; total balance of $336,187.02.

(D) **Non-Traditional Mutual Funds (Account No. *916A):**  Balance of $407,058.73

(E) **Fixed Income – Mutual Fund (Pimco Low Duration, Account No. *926A):**  Balance of $511,768.94.

(F) **Fixed Income – Asset-Backed Securities (Account No. *736A):**  Fixed income balance of $369,479.89; cash balance of $13,612.28; total balance of $383,092.17.

(G) **Equities – Mutual Fund (Oppenheimer Developing Markets Class Y, Account No. *416A):**  Balance of $64,601.00.

---

[2] A copy of the Investment Policy Statement is available upon request.

4

(H) **Equities – Mutual Fund (Ivy International, Account No. *406A):** Balance of $218,811.94.

(I) **Equities – Mutual Fund (Dreyfus Intermediate, Account No. *396A):** Balance of $341,370.00.

(J) **Equities – Mutual Fund (Dodge & Cox International Stock Fund, Account No. *386A):** Balance of $196,743.71.

(K) **Equities – Mutual Fund (RS Small Cap Growth Fund Class Y, Account No. *366A):** Balance of $44,896.38.

(L) **Equities – Mutual Fund (Cambiar Small Cap Fund, Account No. *276A):** Balance of $40,515.70.

(M) **Equities – Mutual Fund (Pimco All Asset Funds Class I, Account No. *126A):** Balance of $336,047.57.

(N) **Equities – Mutual Fund (The Hartford Midcap Fund, Account No. *116A):** Balance of $90,085.64.

(O) **Equities – Mutual Fund (Wells Fargo Special Mid-Cap Value Fund Account No. *106A):** Balance of $86,210.29.

11. The Investment Accounts are funded via wire transfer from the Operating Account (through the Holding Account) if the total combined balance of the Operating Account and Business Savings Sweep goes above a certain monthly maximum target balance. Similarly, if the total combined balance of the Operating Account and Business Savings Sweep goes below a certain monthly minimum target balance, funds are transferred from the Investment Accounts (through the Holding Account) to the Operating Account.

C. **The Bond Document Accounts**

12. Additionally, the Debtor maintains various accounts as required by the Debtor's debt documents (the "Bond Document Accounts"), which are described in detail in the Conroy Declaration. The Bond Document Accounts, which are maintained with US Bank, and the balance of each as of December 31, 2015, are listed below:

5

- (A) **Capitol Lakes Project Series 2008A Bond Fund (Account No. *0000):** Balance of $3,361.99.

- (B) **Capitol Lakes Project Series 2008A General Account (Account No. *0001):** Balance of $0.

- (C) **Capitol Lakes Project Series 2008A LOC Debt Service (Account No. *0003):** Balance of $0.

- (D) **Capitol Lakes Project Series 2008A Debt Service Reserve (Account No. *0004):** Balance of $1,284,693.96.

- (E) **Capitol Lakes Series 2008B Bond Fund (Account No. *1000):** Balance of $20,614.38.

- (F) **Capitol Lakes Series 2008B General Account (Account No. *1001):** Balance of $0.

- (G) **Capitol Lakes Series 2008B LOC Debt Service (Account No. *1003):** Balance of $0.

- (H) **Capitol Lakes Series 2008B Debt Service Reserve Fund (Account No. *1004):** Balance of $2,077,072.59.

- (I) **Capitol Lakes Series 2008C Bond Fund (Account No. *2000):** Balance of $5,044.20.

- (J) **Capitol Lakes Series 2008C General Account (Account No. *2001):** Balance of $0.

- (K) **Capitol Lakes Series 2008C LOC Debt Service (Account No. *2003):** $0.

- (L) **Capitol Lakes Series 2008C Debt Service Reserve Fund (Account No. *2004):** Balance of $430,839.37.

- (M) **WHEFA Demand Revenue Bond Series 2002 Pool LOC (Account No. *8102):** Balance of $479.80.

- (N) **WHEFA Demand Revenue Bond Series 2002 Pool Bond Fund (Account No. *8103):** Balance of $374,153.04.

13. Prepetition, the Bond Document Accounts were funded, as needed, via wire transfer from the Operating Account.

6

**D.   Trust Accounts**

14.   The Debtor also maintains certain accounts that are not connected to the Cash Management System, (the "Trust Accounts," and together with the Cash Management Bank Accounts, the Investment Accounts, and the Bond Document Accounts, the "Bank Accounts"). The Trust Accounts, which are maintained with US Bank, are described below:

(A) **Resident Patient Trust (Account No. *6006):** The Resident Patient Trust is funded from Social Security payments for residents, as well as personal deposits. These are residents' funds held by the Debtor on their behalf. A majority of the Social Security deposits are due to the patient establishing the Debtor as the representative payee. This account is required by Medicare for residents who wish to enter into a representative payee agreement. The Resident Patient Trust is used to fund miscellaneous/personal expenses for residents, as well as their monthly fees. Residents can use these funds for any purpose as long as funds are in their account.

(B) **Resident Trust (Account No. *6565):** The Resident Trust is funded from Social Security payments for residents as well as personal deposits. These are residents' funds held by the Debtor on their behalf. The Resident Trust is used to fund miscellaneous/personal expenses for residents, as well as their monthly fees. Residents can use these funds for any purpose as long as sufficient funds are in their account. The difference between the Resident Patient Trust and the Resident Trust is that the Resident Patient Trust is a Medicare requirement, while the Resident Trust is a courtesy.

(C) **Resident Waitlist Account (Account No. *9578):** The Resident Waitlist Account is funded from waitlist fees and priority waitlist fees (paid in cash, credit card, or check) received from potential residents. The purpose of this account is to hold the funds of the Debtor's potential residents until they move in, in which case such funds are applied to the applicable entrance fee, or until they request a refund of their deposit. This account is separate from all other accounts including the Operating Account.

15.   The Debtor manages its cash receipts, transfers and disbursements through the Bank Accounts. In doing so, the Debtor routinely deposits, withdraws and otherwise transfers funds to, from and between the Bank Accounts by various methods including check, wire transfer, automated clearing house transfer and electronic funds transfer. On a daily basis, the Debtor processes large numbers of transactions through the Cash Management System. The

7

Debtor maintains current and accurate records of all transactions processed through the Cash Management System.

16. The Debtor's Cash Management System is similar to those commonly employed by corporate enterprises of comparable size and complexity. Among other benefits, the Cash Management System permits the Debtor to accurately monitor cash availability at all times. The Cash Management System also permits the Debtor to centrally manage and track the collection and transfer of funds, which reduces administrative burden and expense and maximizes interest income.

17. In addition to the Cash Management System and Bank Accounts, the Debtor uses in the ordinary course of its business numerous business forms (including but not limited to checks, deposit slips, letterhead, contracts, purchase orders and invoices). The Debtor has a supply of these forms on hand. It would be expensive and wasteful, and disruptive to the Debtor's business, to destroy all of these forms and order new ones.

**RELIEF REQUESTED**

18. By this Motion, the Debtor seeks entry of an order, pursuant to Bankruptcy Code sections 105(a), 345, 1107 and 1108, granting the following relief:

(a) Authorizing the Debtor to continue to use the Cash Management System, subject to any modification or other relief granted by order of this Court relating thereto, including the following:

   (i) the continued use of the existing Bank Accounts with the same names and account numbers as such Bank Accounts existed immediately prior to the Petition Date (with the option to both the Debtor and the Banks of streamlining its Cash Management System by closing or consolidating Bank Accounts in accordance with the terms and conditions of the existing account and service agreements);

    (ii)    the ability of the Debtor to deposit funds into and withdraw funds from any of the Bank Accounts (subject to available funds or, in the case of zero balance accounts, subject to the availability of funds in the applicable linked funding accounts) by all usual means, including but not limited to checks, wire transfers, electronic funds transfers and other debits;

    (iii)    the waiver of any requirements to establish separate accounts for cash collateral and/or tax payments;

    (iv)    authorizing and directing the Banks to maintain, service and administer the Bank Accounts, without interruption and in the ordinary course of business, in accordance with applicable non-bankruptcy law and the account agreements and/or other service documentation between the applicable Bank and the Debtor relating to such accounts;

    (v)    authorizing and directing the Banks to rely on the representations of the Debtor as to which Disbursements (as defined below) are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court; and

    (vi)    authorizing the Banks to charge and collect, and authorizing but not directing the Debtor to pay, the prepetition and post-petition service charges and other fees and expenses to which the Banks are entitled under the terms of its account agreements and/or other service documentation with the Debtor;

(b)    Authorizing the Debtor to continue to use its existing business forms without alteration or change; *provided*, *however*, that, once the Debtor has depleted its existing stock of checks, the Debtor shall order new checks with the "debtor in possession" designation; and

(c)    An interim waiver of the deposit and investment requirements of section 345(b) of the Bankruptcy Code to the extent they apply to the Debtor's Bank Accounts.

19.    Contemporaneously with the filing of this Motion, the Debtor has filed other motions seeking authority to pay certain prepetition obligations, including obligations to employees and other entities. With respect to certain of these prepetition obligations, the Debtor already has issued, in the ordinary course of business, checks and other debits that have yet to

9

clear the banking system. In other instances, the Debtor will issue checks or other debits post-petition on account of the prepetition obligations once the Court has entered an appropriate order permitting the Debtor to do so. The Debtor intends to inform the Banks which prepetition checks and other debits should be honored pursuant to orders of the Court authorizing such payment. Regardless of any orders of the Court authorizing prepetition and/or post-petition payments by the Debtor, the Banks shall not be required to honor any overdrafts, checks, drafts, ACH transfers, debits, wires or other transfers from the Bank Accounts (collectively, the "Disbursements") unless there are collected and immediately available funds in the Bank Accounts sufficient to cover such requests.

20. As a result of the foregoing, the Debtor requests that the Banks be authorized to accept and honor all representations from the Debtor as to which Disbursements should be honored or dishonored consistent with any order(s) of the Court and governing law, whether such Disbursements are dated or made prior to, on or subsequent to the Petition Date. To the extent that the Debtor directs that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtor requests authority to issue replacement Disbursements consistent with the orders of this Court. The Debtor further requests that the Banks shall not be liable to any party on account of: (a) following the Debtor's instructions or representations with respect to any order(s) of the Court; or (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item.

21. As described in greater detail below, the Debtor submits that the relief requested herein will help to ensure the Debtor's orderly entry into and administration in chapter 11 and avoid many of the possible disruptions and distractions that could divert the Debtor's attention from more pressing matters during the initial days of this chapter 11 case.

10

**BASIS FOR RELIEF**

A. **Continued Use of the Debtor's Existing Cash Management System and Bank Accounts is in the Best Interests of the Debtor's Estate and Will Not Prejudice Parties in Interest**

22. The Office of the United States Trustee has established *Chapter 11 Operating Instructions and Reporting Requirements* relating to cash management systems (the "UST Guidelines"). The UST Guidelines, which are designed to provide a clear demarcation between a debtor's prepetition and post-petition operations, require, among other things, that a debtor: (a) close all existing bank accounts; (b) open new accounts designated as "debtor in possession" accounts; (c) make all post-petition disbursements by check; and (d) include the words "debtor in possession" on all checks. See 28 U.S.C. § 586 and the UST Guidelines.

23. In larger chapter 11 cases, courts have routinely waived the requirements of the UST Guidelines, recognizing that they are often impractical and potentially detrimental to a debtor's post-petition business operations and restructuring efforts. See, e.g., Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1114 (5th Cir. 1995) (finding that the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets"); Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys., Inc.), 997 F.2d 1039, 1061 (3d Cir. 1993) (finding that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient").

24. Given the size and complexity of the Debtor's business operations, any disruption of its accounting and cash management procedures would be enormously burdensome and disruptive, and could adversely impact the Debtor's efforts to reorganize. At this critical juncture, the Debtor must be able to conduct "business as usual" to the extent possible. To this

11

end, it is essential that the Debtor be permitted to continue to use its existing Cash Management System and Bank Accounts.

25. The Cash Management System and Bank Accounts provide numerous benefits to the Debtor and its estate. Among other benefits, the Cash Management System and Bank Accounts permit the Debtor to centrally control and monitor the collection and transfer of funds, to ensure cash availability, to maximize investment income and to reduce administrative burden and expense. The Debtor has the capability through the Cash Management System to distinguish between prepetition and post-petition transactions without the necessity of closing the Bank Accounts and opening new ones. Moreover, the Debtor has the ability to generate through the Cash Management System detailed and accurate reports. Furthermore, this Debtor maintains accounts containing third party funds for the benefit of its residents. Changing accounts could delay the residents' ability to access their funds.

26. Based on the foregoing, there is good cause for waiver of the requirements of the UST Guidelines. The continued use of the Cash Management System and the Bank Accounts is in the best interests of the Debtor's estate and the Debtor submits that no party in interest would be prejudiced in any way by its continued use.

27. The Court has authority to grant the relief requested in this Motion under Bankruptcy Code section 105(a), which empowers bankruptcy courts to enter "any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Code section 105(a) codifies the "equitable power" of bankruptcy courts and provides "broad authority" to accomplish tasks important to the implementation of the Bankruptcy Code. See United States v. Energy Res. Co., 495 U.S. 545, 549 (1990) (stating that the statutory directive of section 105(a) is "consistent with the traditional

EAST\120250279.7

understanding that bankruptcy courts, as courts in equity, have broad authority to modify creditor-debtor relationships").

**B.**  **Continued Use of the Debtor's Existing Business Forms is in the Best Interests of the Debtor's Estate and Will Not Prejudice Parties in Interest**

28. The Debtor uses in the ordinary course of its business numerous business forms (including but not limited to checks, deposit slips, letterhead, contracts, purchase orders and invoices). To minimize expense to its estate and avoid disruption and confusion on the part of employees, customers and suppliers, the Debtor requests that the Court authorize it to continue to use all existing business forms as such business forms existed immediately before the Petition Date, without reference to the Debtor's status as a debtor in possession. With such authorization, the Debtor will be able to avoid the expense and delay of ordering new business forms.

29. No party in interest would be prejudiced in any way by the Debtor's continued use of its existing business forms. The Debtor believes that the notices that are being issued in connection with the filing of these chapter 11 proceedings, and which will continue to be issued throughout the course of these proceedings, will be sufficient to put interested parties on notice that the Debtor is operating as a debtor in possession. The Debtor has no desire to conceal the fact that it is in chapter 11, and parties doing business with the Debtor undoubtedly will be aware of the Debtor's bankruptcy proceeding. Given these circumstances, changing business forms would be unnecessary and unduly burdensome.

**C.**  **Cause Exists for Waiver of the Requirements of Section 345(b) of the Bankruptcy Code**

30. All excess funds of the Debtor are maintained in the Business Savings Sweep or invested in the Investment Accounts. Although the Debtor's investment practices may not strictly comply in all respects with the guidelines identified in Bankruptcy Code section 345, the

13

Debtor's investments are nevertheless safe, prudent and designed to yield the maximum reasonable return on the funds invested, taking into account the safety of such deposits and investments. Accordingly, the Debtor requests authority to maintain its existing investment practices and a waiver of the requirements of Section 345(b) of the Bankruptcy Code.

31. Pursuant to Bankruptcy Code section 345(b), any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, must be secured by either a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the United States Trustee for the relevant district or the deposit of securities of the kind specified in 31 U.S.C. § 9303. Section 345(b) provides further, however, that a bankruptcy court may allow the use of alternatives to these approved investment guidelines "for cause." See 11 U.S.C. § 345(b); see also In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

32. In Service Merchandise, the court identified the following factors as a guide for determining whether cause exists to waive the requirements of section 345(b):

    (a)    the sophistication of the debtor's business;

    (b)    the size of the debtor's business operations;

    (c)    the amount of the investments involved;

    (d)    the bank ratings of the financial institutions where the debtor's funds are held;

    (e)    the complexity of the case;

    (f)    the safeguards in place within the debtor's own business of insuring the safety of the funds;

    (g)    the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

    (h)    the benefit to the debtor;

    (i)    the harm, if any, to the estate; and

    (j)    the reasonableness of the debtor's request for relief in light of the overall circumstances of the case.

Id. at 896.

33.    Examining these factors, the court in Service Merchandise concluded that "cause" existed because the debtors were "large, sophisticated [companies] with a complex cash management system" that had the capacity to shift funds as needed to ensure their safety. Id. The court also concluded that the benefits of waiving the requirements of section 345(b) far outweighed any potential harm to the estates, and the failure to waive the requirements "would 'needlessly handcuff' these debtors' reorganization efforts." Id. at 897.

34.    Here, the Debtor is a large and sophisticated company with a complex Cash Management System that provides the Debtor with the ability to transfer funds rapidly to ensure their safety and to maximize their investment value. Additionally, pursuant to the Investment Policy Statement, certain investments must meet a high credit rating. Moreover, safeguards are in place, including certain diversification and liquidity requirements. Finally, the Debtor and its estate will receive significant benefit from the continued investment of excess funds. In light of these factors and the safety of the Debtor's investment practices, the Debtor submits that cause exists for waiver of the requirements of Bankruptcy Code section 345(b). Satisfaction of those requirements would impose needless costs on the Debtor's estate and the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtor's business.

35.    The Debtor hereby requests that this Court grant it a 60-day extension of the time to comply with the investment requirements of section 345 and authorize it to continue investing

15

its excess funds in accordance with its prepetition practices and the Investment Policy Statement. During the extension period, the Debtor proposes to discuss with the Office of the U.S. Trustee what modifications to its prepetition practices, if any, would be appropriate under the circumstances.

**D.     The Requirements of Bankruptcy Rule 6003(b) Have Been Satisfied**

36.     For the reasons set forth above, the relief sought in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.  Accordingly, to the extent Bankruptcy Rule 6003(b) applies, the Debtor submits that the requirements of such rule have been satisfied.

**E.     Cause Exists for Waiver of the Stay Imposed by Bankruptcy Rule 6004(h)**

37.     For the reasons set forth above, there is ample cause for waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h) of the Federal Rules of Bankruptcy Procedure. Accordingly, to the extent the stay imposed by such rule applies, the Debtor submits that it should be waived.

## RESERVATION OF RIGHTS

38.     Notwithstanding anything to the contrary in this Motion, the Debtor reserves the right to close any of its existing Bank Accounts and/or to open one or more new accounts as may be necessary in the Debtor's business judgment and consistent with any requirements that may be imposed by the Court.  The Debtor will give notice, however, to the Office of the United States Trustee and any official committee that may be appointed in this case prior to closing any of its existing Bank Accounts and/or opening any new accounts.

## NOTICE

39. Notice of this Motion has been provided to (a) the Office of the United States Trustee for the Western District of Wisconsin; (b) the Office of the Attorney General of the State of Wisconsin; (c) the Wisconsin Office of the Commissioner of Insurance; (d) each of the Debtor's twenty (20) largest unsecured creditors; (e) U.S. Bank, N.A. as trustee; (f) counsel to Santander Bank, N.A.; (g) counsel to KBC Bank N.V.; (h) UBS; and (i) the Internal Revenue Service and state taxing authorities. The Debtor submits that, in light of the nature of the relief requested, no other or further notice is necessary or required.

[*Remainder of page is intentionally left blank*]

EAST\120250279.7

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) authorizing the Debtor to (i) continue to use its existing cash management system, (ii) maintain its existing bank accounts, (iii) continue to use its existing business forms, and (iv) maintain its existing investment practices, and (b) granting such other and further relief as is just and proper.

Dated: January 21, 2016

**DLA PIPER LLP (US)**

By: */s/ Thomas R. Califano*
Thomas R. Califano
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

and

Rebecca R. DeMarb
Sweet DeMarb LLC
One North Pinckney Street, Suite 300
Madison, WI 53703
Telephone: (608) 310-5500
Facsimile: (608) 310-5525
E-mail: rdemarb@sweetdemarb.com

*Proposed Counsel for the Debtor and Debtor in Possession*

## Exhibit A

Cash Management System

# Capitol Lakes Cash Management Flow Chart



EAST\120250279.7