

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Thomas R. Califano
thomas.califano@dlapiper.com
T  212.335.4990
F  212.884.8690

December 22, 2015

**ATTORNEY-CLIENT PRIVILEGED**

Tim Conroy
Capitol Lakes, Inc.
333 W. Main Street
Madison, Wisconsin 53703

Re:   **Engagement and Conflict Waiver Letter for Legal Services**

Dear Mr. Conroy:

1.   **Introduction and Scope of Engagement**. We are pleased that Capitol Lakes, Inc. (the "Client" or the "Company") has requested that DLA Piper LLP (US) (the "Firm") represent the Company in connection with the restructuring of certain financial obligations and, if the Company determines that a chapter 11 filing is necessary, representation of the Company in a chapter 11 case (the "Engagement"). Effective as of the date set forth above, the Firm agrees to represent the Company with respect to the Engagement on the terms and conditions set forth in this letter agreement. We look forward to a harmonious and mutually satisfying relationship. I will serve as your principal contact. You should never hesitate to contact me if and when any question arises.

In this letter agreement, the words "you" and "your" refer to the Company, and the words "we," "us" and "our" refer to the Firm. The terms and conditions set forth in the Terms of Service attached hereto are incorporated herein with the exception of any terms and conditions herein that differ from those in the Terms of Service. Where the terms and conditions differ, this letter shall control.

You may from time to time ask us to perform additional or other services beyond the Engagement described above. If you do request such services, we may need to clear conflicts of interest, and we may need to enter into a separate engagement letter with you. If the scope of our engagement changes, the terms set out in this letter agreement will apply unless we enter into a subsequent letter agreement with you. Otherwise, the Firm will proceed in reliance upon the description and terms set forth in this letter. This Engagement may be terminated by either you or us upon notice to the other, subject to applicable Rules of Professional Conduct. In order to avoid any misunderstandings, it is the Firm's standard policy to set out the terms of our engagement at the outset.

2.   **The Client**. Unless specifically retained, our representation of the Company does not include representation of any of its parents, subsidiaries, affiliates, stockholders, officers or directors ("Affiliates"). Accordingly, it is understood and agreed that any representation by the Firm of another client adverse to any of your Affiliates or other third parties does not constitute a conflict of interest and does not require your consent unless the Firm seeks to represent such client in actual litigation. This agreement has no third-party beneficiaries, and the Firm owes no attorney-client duties to persons or entities other than the Client, even if the Client might owe them fiduciary or other duties.



*Attorney-Client Privilege*

Tim Conroy
December 22, 2015
Page Two

3. **Scope of Engagement.** As described to us, the Engagement involves representing the Company in its efforts to restructure certain financial obligations whether in an out-of-court restructuring or a formal in court chapter 11 bankruptcy case. The services to be provided by the Firm in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement which the Firm is requested and is able to provide and which are consistent with its ethical obligations. As legal counsel, we are not in a position to, and the Company has not retained us to, provide financial advice. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services to be rendered by us and the scope of our engagement.

If the Company determines that a reorganization case under chapter 11 of the Bankruptcy Code is appropriate, we will prepare for the filing of the chapter 11 case by reviewing pertinent documents and preparing the petition with supporting schedules and related pleadings. During the case and subject to our ethical obligations discussed above, and subject to the approval of our retention by the bankruptcy court, we will serve as bankruptcy counsel to the Company as debtor in possession and will advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in chapter 11; prepare such administrative and procedural applications and motions as may be required for the sound conduct of the case; consult with you concerning and participate in the formulation, negotiation, preparation and filing of a plan or plans of reorganization and disclosure statement(s) to accompany the plan(s); take all steps necessary and appropriate to bring the case to a conclusion; and perform the full range of services normally associated with matters such as this which the Firm is in a position to provide. Such representation also will encompass all out-of-court planning and negotiations attendant to these tasks and advice as to corporate transactions and corporate governance, negotiations, out-of-court agreements with creditors and prospective acquirers, review of documents, or preparation of agreements. Additionally, although it is hoped that litigation can be avoided, subject to ethical constraints regarding conflicts of interest, we also will be available to serve the Company in any litigation capacities that become necessary to the extent that any required court approval is obtained.

4. **Progress and Reporting.** We will keep you reasonably informed concerning the representation and will communicate information and advice about significant developments in the matter. We may communicate by letter, telephone, cellular telephone, facsimile transmission or e-mail. You should, of course, feel free to communicate with us on any issue or matter that you feel deserves attention and we will endeavor to respond promptly. In order for us to assist you effectively and efficiently, we assume that you will provide us with the factual information you have which relates to the subject matter of our engagement, and that you will make any appropriate business or technical decisions. In addition, we encourage you to share with us at all times your expectations and any concerns regarding our services at any time during the course of our representation. We believe that you should be actively involved in the



*Attorney-Client Privilege*

Tim Conroy
December 22, 2015
Page Three

strategy and management of your legal affairs and our goal is to encourage candid and frequent communication between us.

5.　**Fees and Costs**.  The Firm has established an hourly standard billing rate for each attorney, paralegal, analyst, consultant and law clerk.  My hourly rate at present is $985.00.  Other attorneys who may work on this matter and their rates are: Rachel Nanes ($555.00) and Maria Grabis ($460.00)  We try to assign work to lawyers, paralegals and others who can provide the necessary services most efficiently, but I will continue to be responsible for the entire assignment.  Hourly rates are normally adjusted once a year for work performed beginning in January.  You consent to these rate adjustments unless you notify the Firm, in writing, to the contrary.  We customarily send monthly invoices for services rendered during the previous month.  In addition, our billing statements will include third-party charges and disbursements incurred by us in the course of performing legal services, which shall be billed by the Firm without mark-up.  These items will be billed in accordance with our standard practice, which may be periodically updated.  Each invoice issued by us will include an invoice number, a description of the work performed, the hours expanded by each individual, and the hourly rate of each individual.  Payment is due upon receipt of our invoice.

6.　**Retainer**.  In the event a chapter 11 filing is necessary the Firm will require a security retainer in the amount of $250,000.00 (the "Retainer") payable two business days prior to the anticipated filing of the chapter 11 case of the Company.  In addition, separate and apart from the Retainer, the Firm will require that all outstanding fees and expenses incurred by the Firm in connection with the Engagement through and including one day prior to the anticipated filing of the chapter 11 case of the Company be paid in full by the Company on the day prior to the anticipated filing of such chapter 11 case.  The Retainer will remain your property unless and until we apply such funds as charges for services as we render them.  If, for any reason, you do not promptly pay any Firm invoice relating to this matter, the Firm may, in its sole discretion, apply available funds in the Retainer account to your past-due balance.  As the Retainer is depleted, the Firm will request that you replenish it.  At the conclusion of our engagement, after payment of all other amounts due, the Firm will return any remaining balance of your retainer in the account to you.



*Attorney-Client Privilege*

Tim Conroy
December 22, 2015
Page Four

All payments to the Firm, including the Retainer, should be made by wire transfer as follows:

> Bank Name: M & T Bank
> Address: 25 South Charles Street, 18th Floor
> Baltimore, MD 21201
> Bank Fax #: 410-244-4022
> Bank Phone #: 410-244-4754 (Tenair Agurs)
> Account Name: DLA Piper LLP (US) Operating Account
> Account #: 074-8148-5
> ABA Transit #: 022000046
> Swift Code: MANTUS331NT

7.  **Matters Outside of the U.S.**  DLA Piper lawyers outside the U.S. may be engaged to handle legal matters on behalf of, or adverse to, you or your Affiliates located outside the United States. Although these matters may have no relation to the U.S., the U.S. conflict of interest rules could be construed to apply since you are a client of DLA Piper US. The U.S. rules are far more stringent than those in most other countries. As a result, a matter that is not a conflict of interest under applicable foreign rules could be considered to be a conflict of interest under the U.S. rules. The Client agrees that in matters pending outside the U.S., which do not involve DLA Piper US lawyers, conflicts of interest issues will be governed by the rules of the jurisdiction in which the matter is proceeding.

8.  **Advance Waiver of Unrelated Conflicts of Interest.**  The Firm is a large law firm with offices in various locations throughout the United States, and with related practice entities located in South America, Europe, Asia, Africa and Australia. As such, the Firm represents a broad base of clients on a variety of legal matters and may currently or in the future represent one or more other clients in unrelated matters or transactions in which your interests or those of your Affiliates are adverse to those other clients. For example, we may represent other clients in corporate matters involving or concerning the Client or your Affiliates (including mergers and acquisitions, takeovers, and other change-in-control issues and transactions), or in commercial transactions with the Client or your Affiliates (including preparation and negotiation of agreements, licenses, leases, loans, securities offerings or underwritings), or in other matters and transactions involving the Client or your Affiliates. We may also represent other clients on legislative or policy matters, or in administrative proceedings that may involve or affect the Client or your Affiliates. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of our Firm in pending or future matters. Given that possibility, we wish to be fair not only to you, but also to our other clients as well. This will confirm that the Company waives all such conflicts of interest, and consents to the Firm's current and future representation of such other clients in any of such matters without the need for any further notice or consent from the Company even though the Company's interests are adverse, provided that such matters



*Attorney-Client Privilege*

Tim Conroy
December 22, 2015
Page Five

are not the same, or substantially related to, a matter in which we represent the Company. We do not view this advance waiver and consent regarding unrelated matters to permit unauthorized disclosure or use of any of the Client's confidential or privileged documents or information which the Client has provided to us as the Client's lawyers.

Furthermore, in the event that the Firm is retained as bankruptcy counsel in a chapter 11 case commenced by the Company, the Bankruptcy Code requires, among other things, that the Firm be and remain "disinterested" and, thus, the Firm may not hold or represent any interest materially adverse to the Company or the bankruptcy estate. Based on our current review of the Company's relationships with third parties, we do not believe that there are any limits on our ability to represent the Company on the Engagement, even if the Company seeks relief under chapter 11 of the Bankruptcy Code. Nonetheless, for purposes of this engagement letter, the Company should assume that we represent a substantial number of the Company's creditors and stakeholders on matters unrelated to the Company. In the event that a chapter 11 case is commenced, we will prepare a disclosure summary that will be publicly disclosed and will be updated periodically thereafter in connection with the filing of interim fee applications and as otherwise required.

Finally, other than as set forth herein, you acknowledge that we have informed you that in certain circumstances we might not represent the Company in active litigation against a Firm client and that if the Company desires to engage in any such litigation, the Company might need to retain special counsel to do so. Based on the information you have provided to date, we are unaware of any limitation on our representation, but will advise of any such issue as soon as practicable should one arise.

Our representation of the Company is premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit without the Company's consent. Provided that the Firm acts in this manner, the Company would not for itself or any other party assert that the Firm's possession of such information, even though it may relate to a matter for which the Firm is representing another client or may be known to someone at the Firm working on the matter, (a) is a basis for disqualifying the Firm from representing another of its clients in any matter in which the Company or any other party has an interest; or (b) constitutes a breach of any duty owed by the Firm.

9.      **Arbitration of Disputes**. We anticipate a harmonious and satisfactory attorney-client relationship. If any disputes arise between us, we shall submit them to binding arbitration. If you do not wish to agree to arbitrate any disputes with us, you should not sign this letter.

10.     **Termination**. Unless terminated earlier, this representation and, unless the Firm represents you in other matters, the attorney-client relationship, will terminate automatically upon the Client's receipt of the Firm's statement first reflecting completion of the substantive legal services described in the first



*Attorney-Client Privilege*

Tim Conroy
December 22, 2015
Page Six

paragraph above. Subsequent statements sent to collect expenses and/or unpaid balances, and/or the state of accounting/business records or client lists at the Firm, shall not extend the attorney-client relationship. After completion of the matter, changes may occur in laws or regulations that could have an impact on Client's future rights or responsibilities. Unless the Client engages the Firm after completion of this matter to provide additional services arising from the matter, it is understood and agreed that the Firm will have no continuing obligation to advise the Client or any other person or entity with respect to future developments.

11.     **Records Retention and Disposal**. At the conclusion of the legal services described in the first paragraph, above, you may request that your file in this matter (including a copy of any work product not previously provided to you) be sent to you, or, if requested by you, forwarded to your chosen successor counsel. If so, the Firm reserves the right, at its own discretion and expense, to retain a copy of all or part of the files you request. If you do not request your file, then the Firm will store the file at its expense for a period of seven (7) years following the conclusion of the matter. Thereafter, unless we receive written instructions from you to the contrary, the Firm will destroy the file, consistent with maintaining confidentiality, without further notice.

12.     **Consultation with Counsel**. In the course of representing the Client, we may consult with our own counsel on our own behalf and without cost to the Client, whether outside counsel or attorneys inside the Firm who do not perform work for the Client on the matter, regarding our engagement for the Client or one or more aspects of that engagement. To the extent that we are addressing the Firm's rights or responsibilities, a conflict of interest might be deemed to exist between the Firm and the Client, particularly if a dispute were to arise between us and the Client regarding the matter. The Client hereby consents to such consultation, and waives any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from continuing to represent the Client or from acting in our own behalf, even if doing so might be deemed adverse to the interests of the Client. Client acknowledges that such communications are protected by our own attorney-client privilege from disclosure to the Client.

The provisions of this letter will continue in effect, including if the Firm's representation of the Company was ended at your election (which, of course, the Company would be free to do at any time) or by the Firm (which would be subject to ethical requirements). In addition, the provisions of this engagement letter will apply to future engagements of the Firm by the Company unless we mutually agree otherwise.

This agreement shall be governed by and interpreted in accordance with the laws of the State of New York without regard to its conflicts of laws principles.



*Attorney-Client Privilege*

Tim Conroy
December 22, 2015
Page Seven

If this letter is satisfactory, please sign a copy and return it to me. Obviously, if you want to discuss any aspect of this letter further, please call me. Once again, thank you for this opportunity. We will endeavor to provide prompt and responsive legal services at all times.

Very truly yours,

Thomas R. Califano



*Attorney-Client Privilege*

Tim Conroy
December 22, 2015
Page Eight

I have read the above engagement letter and agree and accept the terms and conditions set forth therein.

Dated: 12/22/15

CAPITOL LAKES, INC.

By: *[signature]*
Title: Executive Director



## TERMS OF SERVICE

### 1. INTRODUCTION

These Terms of Service set forth the terms and conditions under which DLA Piper LLP (US) ("the Firm") will act as your counsel for all existing and future matters (collectively, the "Engagement").

The Firm has issued or will issue an engagement letter, setting forth the scope of the representation, the fee agreement, and other matter-specific terms ("Engagement Letter"). These Terms of Service should be read and understood in conjunction with the Engagement Letter. The Terms of Service and Engagement Letter are collectively referred to as "the Engagement Terms." Where there is any inconsistency between these Terms of Service and the Engagement Letter, the latter will control.

The Terms of Service supersede all prior agreements between you and the Firm with respect to the Engagement. The Terms of Service can only be altered or amended by a writing signed by both you and the Firm.

The words "you" and "your" refer to the client(s) specified in the relevant engagement letter. The words "we," "us" and "our" refer to the Firm.

### 2. CLIENT(S) REPRESENTED

You agree and acknowledge that the Firm's representation of you does not create an attorney-client relationship with any other entity or person, including without limitation, your corporate parents, subsidiaries, affiliates, other entities owned, in whole or in part by you, entities that hold direct or indirect interests in you, or any of your directors, officers, stockholders, employees, or agents, unless such entities or persons are specifically named in the Engagement Letter.

In representing corporations, we may provide information or advice to directors, officers, or employees in their corporate capacities. The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their corporate capacities.

In representing partnerships, we may provide information or advice to partners, officers or employees in their capacities as your representatives. The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their representative capacities.

In representing limited liability companies, we may provide information or advice to members, officers or employees in their capacities as your representatives. The provision of such information or advice does not create an attorney-client relationship between us and the individual(s) other than in their representative capacities.

In the event that you are acquired or are otherwise subject to a change in control (including by a person or group becoming a controlling affiliate of yours) after the inception of the Engagement, it is understood that the Firm does not represent the acquiring entity or such controlling affiliate or establish an attorney-client relationship with such entities or affiliates.

The Firm's representation of an association or trade group does not create an attorney-client relationship with any of the association or trade group's constituents, members, affiliates or participants individually.

### 3. COUNSEL GUIDELINES

You agree and acknowledge that the Engagement Terms shall control over terms contained in your outside counsel guidelines or similar instructions supplied by you at any time.

### 4. CONFLICTS OF INTEREST

The Firm and its affiliated entities represent clients in a broad range of industries and in a wide variety of legal matters, nationally and internationally. Absent an effective conflict of interest waiver, conflicts of interest could arise



that could deprive you or other clients of the right to select the Firm as their counsel, and preclude us from representing you or other clients in ongoing or future matters. In undertaking the Engagement, the Firm wants to be fair to you and to our other clients. Accordingly, you acknowledge and agree that the Firm and its affiliated entities may, now or in the future, represent other persons or entities on matters adverse to you or any of your current or future affiliates, including, without limitation, in commercial transactions, auctions, mergers and acquisitions, intellectual property matters, restructuring or bankruptcy matters, litigation, arbitration or other dispute resolution procedure, other than those for which the Firm had been or is then engaged by you. Such matters shall be referred to as "Allowed Adverse Representation." You understand that the foregoing examples are illustrative, not exhaustive.

You agree that you will not, for yourself, or any other entity or person, assert the Firm's representation of you or any of its current or future affiliates as a basis for disqualifying the Firm from representing another party in an Allowed Adverse Representation. You further agree that an Allowed Adverse Representation does not breach any duty that the Firm owes to you or any of your affiliates. You may consult with independent counsel regarding this section before agreeing to it.

You agree that this section does not expand the scope of the Engagement to encompass your affiliates unless expressly agreed by the Firm.

5.      **CONFIDENTIALITY**

The Firm has a professional obligation not to disclose your confidential information or to use it for another party's benefit without your consent. These obligations are subject to certain exceptions, including laws and regulations relating to money laundering and terrorist financing. Under certain circumstances, the Firm may be obligated to disclose information to governmental authorities, and we may be prohibited from informing you that disclosure has been made or the reasons for such disclosure. We may have to cease work for you for a period of time and not be able to inform you of the

reason. Provided that the Firm acts consistent with its duty of confidentiality, subject to the exceptions noted in this section and those set forth in the applicable Rules of Professional Conduct, you agree that you shall not assert that the Firm's possession of such confidential information is a basis for disqualifying the Firm from representing another of its clients in any matter in which you have an interest, or that it constitutes a breach of any duty owed by the Firm, even though the information may relate to a matter in which the Firm is representing another client or may be known to someone at the Firm working on the matter.

If the Firm receives a subpoena or request for information that is within our custody or control, or the custody or control of our agents or representatives, we will, to the extent permitted by applicable law, advise you before responding so that you have the opportunity to intervene or assert any objections. Should you object to the production of such information, the Firm may provide such information only to the extent authorized by you or required by a court or other governmental body of competent jurisdiction. You agree to pay the Firm for services rendered and charges and disbursements incurred in responding to any such request for information at the Firm's customary billing rates and pursuant to the Firm's charges and disbursements policies.

You consent and agree that the Firm may disclose the fact of the Engagement and related general information to the extent that such disclosure does not convey any confidential and or non-public information and is not adverse to your interests.

6.      **ARBITRATION OF DISPUTES**

Any dispute or claim between you and the Firm arising out of or relating to the Engagement Terms or their breach, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud and disputes regarding attorney fees and/or costs charged under this Agreement (except to the extent provided below) shall be submitted to binding arbitration before the American Arbitration Association, and subject to the Commercial



Arbitration Rules. This provision shall not apply to any ethics or disciplinary proceedings against the Firm. The parties shall bear their own legal fees and costs for all claims.

You acknowledge that by agreeing to this Arbitration provision, you are giving up the right to litigate claims against the Firm, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. You acknowledge that you have read and understand this arbitration provision, and that you voluntarily agree to binding arbitration.

**NOTE:** You are entitled to consult an independent lawyer to review this arbitration provision before agreeing to it. By accepting these Engagement Terms, you acknowledge that you have consulted with independent counsel, or if not, that you had the opportunity to do so.

### 7. CLIENT IDENTIFICATION

Many jurisdictions have adopted or are in the process of changing or creating anti-money laundering, counter-terrorist financing, embargo, trade sanctions or similar policies or laws. As part of the Firm's responsibility for compliance with such laws, rules, regulations or policies, the Firm is obliged to take detailed steps to verify the identity of our clients and sources of payment. Accordingly, prior to commencement of work, the Firm will have already requested, or will be requesting shortly, that you provide us with required identification documents. A delay or failure to provide information required for verification purposes may prevent us from commencing or require us to suspend work on the matter. It is also necessary for us to reserve the right to request additional information believed necessary, advisable or appropriate to verify identity and/or to ensure the Firm's compliance with applicable laws, rules, regulations, best practices and anti-money laundering matters from time to time.

### 8. DATA TRANSFER CONSENT

Due to legal obligations applicable to the Firm or our affiliated offices, and to efficiently maintain information provided to us, the Firm may transfer some or all of any personal or other data and information ("Data") that you provide to the Firm to one or more DLA Piper offices in other countries that may not be subject to data protection laws similar to those in the jurisdiction in which the Data is first received. By signing this letter, you give us specific consent to obtain and transfer such Data, and confirm that you have obtained and grant us all required consents to allow the Firm to do so.

### 9. TERMINATION

Either of us may terminate the Firm's representation of you in a particular ongoing matter, or in the Engagement, at any time. Unless otherwise terminated by you or the Firm, our representation of you with respect to a particular matter will terminate upon conclusion of the Firm's active involvement in the matter (even if the Firm continues active involvement in other matters on your behalf). Upon termination, we will have no further duty to inform you of future developments or changes in law as may be relevant to such matter. Further, unless you and the Firm mutually agree in writing to the contrary, we will have no obligation to monitor renewal, expiration, or notice dates or similar deadlines which may arise from the matters for which we had been retained.

If, at any time, our engagement is limited to a specific matter, and at the time such matter is completed, we are not representing you in any other matters, our attorney-client relationship will be deemed terminated whether or not we send you a letter to confirm such termination. Thereafter, if you and the Firm mutually agree to engage on a matter or matters, these Terms of Service (and any applicable Engagement Letter) would then become effective.

If permission for withdrawal is required by a court, we shall apply promptly for such permission and termination shall coincide with the court order for withdrawal.



### 10. CLIENT FILES AND RECORDS RETENTION/DISPOSAL

The Firm maintains physical files relating to the matter(s) in which we represent you. These may contain materials received from you and other materials, including correspondence, memos, filings, drafts, closing sets, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to our representation of you (the "Client File"). The Client File is your property. We may also place in the files documents containing our attorney work product, mental impressions or notes, and drafts of documents ("Work Product"). You agree that Work Product shall be and remain our property. In addition, electronic records (except those to be provided to you at the conclusion of the matter, as described below) such as e-mail and documents prepared on our word processing and document management system shall not be considered part of your Client File unless it has been printed and the hard copy has been placed in your physical file. You agree that we may adopt and implement reasonable retention policies for such electronic records and that we may store or delete such records in our discretion.

At the conclusion of a matter (which is defined as the time that our work on any matter subject to the Engagement Terms has been completed), you have the right to take possession of the original of your Client File (not including Work Product). We will be entitled to make and retain physical or electronic copies of all or part of the Client File, at our own discretion and expense.

If you do not take possession of the Client File at the conclusion of a matter, the Firm will store the file at its expense for a period of seven (7) years. Our retention of the Client File shall not constitute or be deemed to indicate the existence of an ongoing attorney-client relationship. Thereafter, unless we receive written instructions from you to the contrary, the Firm will destroy the Client File, consistent with maintaining confidentiality, without further notice or obligation to you.

### 11. CONSULTATION WITH COUNSEL

We may consult with our own counsel, whether outside counsel or attorneys inside the Firm who do not perform work for you on the matter, regarding our representation of you. These consultations may be on our own behalf and will not be charged to you. To the extent that we are addressing the Firm's own rights or responsibilities regarding the matter, a conflict of interest might be deemed to exist between the Firm and you. You hereby consent to such consultation, and waive any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from continuing to represent you or from acting on our own behalf, even if doing so might be deemed adverse to your interests. You acknowledge that the communications related to the consultations are protected by the Firm's own attorney-client privilege from disclosure to you.

### 12. SEVERABILITY

If any provision of the Engagement Terms is held invalid or unenforceable by any court or arbitrator of competent jurisdiction, the other provisions of the Engagement Terms shall remain in full force and effect. Any provision of the Engagement Terms held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. Our waiver of any of the Engagement Terms shall not be deemed a further or continuing waiver of such term or any other term, unless specifically stated.