## Exhibit A

Blackline Comparison of the Fourth Amended Plan to the Third Amended Plan

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | § | Case No. 16-10158 |
| | § | |
| **CAPITOL LAKES, INC.** | § | Chapter 11 |
| | § | |
| | § | Hon. Robert D. Martin |
| Debtor. | § | |

## DEBTOR'S ~~THIRD~~FOURTH AMENDED PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Thomas R. Califano
thomas.califano@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone:  (212) 335-4500
Facsimile:   (212) 335-4501

Rebecca R. DeMarb
rdemarb@sweetdemarb.com
Sweet DeMarb LLC
One North Pinckney Street, Suite 300
Madison, WI 53703
Telephone:  (608) 310-5500
Facsimile:   (608) 310-5525

*Counsel for the Debtor and*
*Debtor in Possession*

Dated:  ~~April 17~~May 18, 2016

SECTION 1.      DEFINITIONS AND INTERPRETATION ........................................... 1

    A.    Definitions ........................................................................................... 1

    B.    Interpretation:  Application of Definitions and Rules of Construction ........ 10

SECTION 2.      TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND TRUSTEE FEES ........................................................... 10

    2.1    Administrative Claims ........................................................................ 10

    2.2    Professional Compensation ............................................................. 11 10

    2.3    Priority Tax Claims ........................................................................... 11

    2.4    Trustee Fees ...................................................................................... 11

SECTION 3.      CLASSIFICATION AND TREATMENT OF CLAIMS ...................... 11

    3.1    Classification and Specification of Treatment of Claims ................. 11

    3.2    Classes of Claims ............................................................................. 12

    3.3    Acceptance or Rejection of the Plan ............................................... 14 13

SECTION 4.      MEANS FOR IMPLEMENTATION OF THIS PLAN ....................... 14

    4.1    Sources of Consideration ................................................................. 14

    4.2    New Senior Debt .............................................................................. 14

    4.3    New Management Agreement ........................................................... 14

    4.4    Vesting of Assets in the Reorganized Debtor .................................. 15

    4.5    Corporate Existence ......................................................................... 15

    4.6    Reorganized Debtor's Governance .................................................. 15

    4.7    Officers of Reorganized Debtor ...................................................... 15 16

    4.8    Employee Benefits ........................................................................... 15 16

    4.9    1111(b) Election .............................................................................. 16

    4.10    Restructuring Transactions .............................................................. 16

    4.11    Corporate Action ............................................................................. 16 17

    4.12    Section 1146 Exemption from Certain Taxes and Fees ................... 17

    4.13    Preservation of Causes of Action of the Debtor ............................. 17

SECTION 5.      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................................... 17 18

    5.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ............................................................................................... 17 18

    5.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases ............................................................................................... 18

| | | | |
|---|---|---|---|
| 5.3 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | | ~~18~~19 |
| 5.4 | Insurance Policies | | 19 |
| 5.5 | Modifications, Amendments, Supplements, Restatements or Other Agreements | | 19 |
| 5.6 | Reservation of Rights | | 19 |
| 5.7 | Contracts and Leases Entered Into After the Petition Date | | ~~19~~20 |
| SECTION 6. | PROVISIONS GOVERNING DISTRIBUTIONS | | ~~19~~20 |
| 6.1 | Timing and Calculation of Amounts to Be Distributed | | ~~19~~20 |
| 6.2 | Disbursing Agent | | 20 |
| 6.3 | Rights and Powers of Disbursing Agent | | 20 |
| 6.4 | Payments and Distributions on Disputed Claims | | 20 |
| 6.5 | Special Rules for Distributions to Holders of Disputed Claims | | ~~20~~21 |
| 6.6 | Delivery of Distributions in General | | ~~20~~21 |
| 6.7 | Undeliverable Distributions and Unclaimed Property | | 21 |
| 6.8 | Withholding and Reporting Requirements | | 21 |
| 6.9 | Setoffs | | 21 |
| 6.10 | Insurance Claims | | ~~21~~22 |
| 6.11 | Applicability of Insurance Policies | | 22 |
| 6.12 | Allocation of Distributions between Principal and Unpaid Interest | | 22 |
| SECTION 7. | PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS | | 22 |
| 7.1 | Prosecution of Objections to Claims | | 22 |
| 7.2 | Allowance of Claims | | 22 |
| 7.3 | Distributions after Allowance | | ~~22~~23 |
| 7.4 | Estimation of Claims | | ~~22~~23 |
| SECTION 8. | SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS | | 23 |
| 8.1 | Compromise and Settlement of Claims and Controversies | | 23 |
| 8.2 | Releases by the Debtor | | 23 |
| 8.3 | Releases by Holders of Claims | | 24 |
| 8.4 | Exculpation | | ~~24~~25 |

| | | | |
|---|---|---|---|
| 8.5 | Discharge of Claims | | 25 |
| 8.6 | Injunction | | 25 |
| 8.7 | Term of Injunctions or Stays | | ~~26~~27 |
| 8.8 | Protection against Discriminatory Treatment | | ~~26~~27 |
| 8.9 | Release of Liens | | 27 |
| SECTION 9. | CONDITIONS PRECEDENT TO CONFIRMATION OF THIS PLAN AND THE EFFECTIVE DATE | | 27 |
| 9.1 | Conditions Precedent to Confirmation | | 27 |
| 9.2 | Conditions Precedent to the Effective Date | | ~~27~~28 |
| 9.3 | Waiver of Conditions | | 28 |
| 9.4 | Effect of Failure of Conditions | | 28 |
| SECTION 10. | MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN | | ~~28~~29 |
| 10.1 | Modification and Amendments | | ~~28~~29 |
| 10.2 | Effect of Confirmation on Modifications | | 29 |
| 10.3 | Revocation or Withdrawal of this Plan | | 29 |
| SECTION 11. | RETENTION OF JURISDICTION | | 29 |
| SECTION 12. | MISCELLANEOUS PROVISIONS | | ~~31~~32 |
| 12.1 | Immediate Binding Effect | | ~~31~~32 |
| 12.2 | Additional Documents | | 32 |
| 12.3 | Dissolution of the Committee | | 32 |
| 12.4 | Reservation of Rights | | 32 |
| 12.5 | Successors and Assigns | | 32 |
| 12.6 | Votes Solicited in Good Faith | | 32 |
| 12.7 | Closing of Chapter 11 Case | | ~~32~~33 |
| 12.8 | Notices | | ~~32~~33 |
| 12.9 | Headings | | 33 |
| 12.10 | Severability | | 33 |
| 12.11 | Validity and Enforceability | | 33 |
| 12.12 | Plan Supplement | | ~~33~~34 |
| 12.13 | Governing Law | | ~~33~~34 |
| 12.14 | Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b) | | 34 |

Capitol Lakes, Inc. hereby proposes this Debtor's ~~Third~~Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

## SECTION 1.  DEFINITIONS AND INTERPRETATION

### A.  **Definitions**.

The following terms used herein shall have the respective meanings below:

1.1  ***506(a) Valuation Hearing*** shall mean the hearing held by the Bankruptcy Court commencing on April 6, 2016 which determined the valuation of the Bank Secured Claims and the Bank Deficiency Claims in accordance with section 506(a)(1) of the Bankruptcy Code.

1.2  ***1111(b) Election*** shall mean an election, made on or before May 2, 2016, by both of the holders of the Allowed Bank Secured ~~Claim~~Claims to have their Claims treated pursuant to section 1111(b) of the Bankruptcy Code.

1.3  ***1111(b) Amended and Restated Note*** shall mean such amended and restated note, effective on the Effective Date ~~and incorporating the terms of the existing notes, as modified as,~~ as more fully described in ~~Article V.D of the Disclosure Statement~~Section 4.9 herein.

1.4  ***Accrued Professional Compensation*** means, at any given moment, all accrued, contingent and/or unpaid fees (including success fees) for legal, financial advisory, accounting and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Case, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid.

1.5  ***Administrative Claim*** means any Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtor; (b) compensation for Accrued Professional Compensation; (c) all fees and charges assessed against the Estate pursuant to chapter 123 of title 28 of the United States Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

1.6  ***Allowed*** means, with reference to any Claim against the Debtor, a Claim (a) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or the Plan; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with the Plan; or (c) that is allowed (i) by a Final Order, (ii) by an agreement between the holder of such Claim and the Debtor or the

Reorganized Debtor or (iii) pursuant to the terms of the Plan; provided, however, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under (a) above (the expiration of the applicable deadline), the Debtor does not waive its rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced. An Allowed Claim (x) includes a Disputed Claim to the extent such Disputed Claim becomes Allowed after the Effective Date and (y) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of distributions under the Plan, include interest on such Claim accruing from and after the Petition Date.

1.7    ***Allowed Bank 1111(b) Claim*** shall have the meaning as set forth in ~~Article~~Section 4.9 herein.

1.8    ***Assets*** means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to Bankruptcy Code section 541, Cash, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, all of the Debtor's interests in The Capitol Lakes Foundation, Inc., Senior Housing of Middleton, Inc., and Middleton Glen, Inc., real and personal, tangible and intangible, and proceeds of any of the foregoing.

1.9    ***Bank Deficiency Claims*** means the unsecured portion of the Claims held by the Banks on account of the Reimbursement Agreements and Swap Agreements, as provided in Bankruptcy Code section 506(a) and as determined at the 506(a) Valuation Hearing.

1.10    ***Bank Secured Claims*** means any Claims held by the Banks on account of the Reimbursement Agreements and Swap Agreements, to the extent of the value of the Banks' interest in the Estate's interest in such property, as provided in Bankruptcy Code section 506(a) and as determined at the 506(a) Valuation Hearing.

1.11    ***Banks*** means, collectively, Santander Bank, N.A. and KBC Bank, N.V.

1.12    ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Case.

1.13    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Western District of Wisconsin having jurisdiction over the Chapter 11 Case.

1.14    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.15    ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Madison, Wisconsin.

1.16    *Cash* means cash and cash equivalents in certified or immediately available U.S. funds, including but not limited to bank deposits, checks and similar items.

1.17    *Causes of Action* means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) any claim listed in the Plan Supplement.

1.18    *Chapter 11* means chapter 11 of the Bankruptcy Code.

1.19    *Chapter 11 Case* means the above-captioned case.

1.20    *Claim* means a claim, as defined by Bankruptcy Code section 101(5), against the Debtor or its Assets, whether or not asserted.

1.21    *Class* means a class or category of Claims as classified and described in Section 3 of this Plan.

1.22    *Committee* means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

1.23    *Confirmation* means entry of the Confirmation Order.

1.24    1.23  *Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

1.25    1.24  *Confirmation Hearing* means the hearing on confirmation of this Plan, pursuant to Bankruptcy Code section 1129.

1.26    1.25  *Confirmation Order* means the order entered by the Bankruptcy Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

1.27    1.26  *Corporate Governance Documents* means the certificates of incorporation, certificates of formation, limited liability agreements and by-laws of the Debtor and the Reorganized Debtor, which such amended Corporate Governance Documents may be provided in the Plan Supplement.

1.28    1.27 ***Creditor*** means a holder of a Claim.

1.29    1.28 ***Cure*** means the payment of Cash by the Reorganized Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease of the Debtor and (ii) permit the Reorganized Debtor to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

1.30    1.29 ***Current Management Agreement*** means that certain affiliate management agreement entered into by and between the Manager and Debtor, dated as of March 18, 2014 (as the same may be amended, supplemented or modified from time to time).

1.31    ***DCOH Requirement*** shall have the meaning set forth in Section 4.3 herein.

1.32    1.30 ***Debtor*** means Capitol Lakes, Inc., as debtor and debtor in possession, and includes the Debtor's Estate, where appropriate.

1.33    ***Deferred Fees*** shall have the meaning set forth in Section 4.3 herein.

1.34    1.31 ***Disallowed Claim*** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

1.35    1.32 ***Disbursing Agent*** means the Debtor or the Reorganized Debtor, or the entity or entities chosen by the Debtor or the Reorganized Debtor to make or facilitate distributions pursuant to this Plan.

1.36    1.33 ***Disclosure Statement*** means the *Disclosure Statement for the Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated April 17, 2016, prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and approved by the Bankruptcy Court, as the same may be altered, modified, or amended from time to time.

1.37    1.34 ***Disputed*** means, with respect to any Claim, any Claim that is not yet Allowed and is subject to a claims objection filed before any deadline set by the Bankruptcy Court.

1.38    1.35 ***Distribution Date*** means the date, occurring as soon as practicable after the Effective Date, on which the Disbursing Agent first makes distributions to holders of Allowed Claims as provided in this Plan and any date thereafter on which the Disbursing Agent makes distributions to holders of Allowed Claims as provided in this Plan.

1.39    1.36 ***Distribution Record Date*** means, other than with respect to public securities cancelled by the Plan, the Effective Date or such other date as may be designated in the Confirmation Order.

1.40 1.37 **Effective Date** means a Business Day selected by the Debtor, which is, unless the Confirmation Order directs otherwise, five (5) Business Days after the date on which each of the conditions to this Plan's Effective Date set forth herein has either been satisfied or waived in accordance with this Plan.

1.41 1.38 **Estate** means the estate of the Debtor created by the Debtor's Chapter 11 Case pursuant to Bankruptcy Code section 541.

1.42 1.39 **Exculpated Claim** means any claim related to any act or omission in connection with, relating to or arising out of the Debtor's in or out of court restructuring efforts, the Chapter 11 Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Case, the pursuit of confirmation of this Plan, the administration and implementation of this Plan, the entry into the New Senior Debt, or the distribution of property under the Plan or any other related agreement; provided, however, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud to the extent imposed by applicable non-bankruptcy law. For the avoidance of doubt, no Cause of Action, obligation or liability expressly set forth in or preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

1.43 1.40 **Exculpated Party** means each of: (i) the Debtor and its member or members, (ii) the Reorganized Debtor and its member or members, (iii) the Manager in any capacity, (iv) members of the Committee, but solely in their capacity as members thereof, and (v) the current and former officers, directors, members, managers, employees, attorneys and advisors, each in their respective capacities as such, of each of the foregoing.

1.44 1.41 **Executory Contract** means a contract to which the Debtor is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

1.45 1.42 **Facility** means the continuing care retirement community known as Capitol Lakes, located in Madison, Wisconsin which is a full service facility offering residents a full lifecycle of services during their retirement years from independent living to skilled nursing care.

1.46 1.43 **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the

possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

1.47   1.44 *General Unsecured Claim* means any unsecured Claim that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Bank Secured Claim, Other Secured Claim, Bank Deficiency Claim, Resident Claim, Manager Claim, or Subordinated 510(b) Claims.

1.48   1.45 *Health Center Funding* means those funds, if any, advanced by Manager in its sole discretion, to the Debtor or Reorganized Debtor for expenditures relating to funding a renovated health center or similar capital expenditure at the Facility.

1.49   1.46 *Insurance Policies* means, collectively, all of the Debtor's insurance policies.

1.50   1.47 *Intercreditor Agreement* means that certain Intercreditor Agreement, by and between KBC Bank, N.V. and Sovereign Bank, and acknowledged and consented to by Meriter Retirement Services, as predecessor in interest to the Debtor, and U.S. Bank National Association, dated as of March 1, 2008, as the same may be amended, modified or supplemented from time to time.

1.51   1.48 *Issuer* means Wisconsin Health and Educational Facilities Authority, a body politic and corporate constituting a public instrumentality created and existing under and by Chapter 231 of the Wisconsin Statues.

1.52   1.49 *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.53   *Management Fees* shall have the meaning set forth in Section 4.3 herein.

1.54   1.50 *Manager* means Pacific Retirement Services, Inc., as manager of the Facility pursuant to the Current Management Agreement.

1.55   1.51 *Manager Claims* means all Claims held by the Manager against the Debtor.

1.52 *New Management Agreement* means that certain agreement to be entered into by and between the Manager and Debtor on or prior to the Effective Date, which shall be documented in substantially the same form as the Current Management Agreement with the sole material modification being the reinstatement of the full Base Management Fee not to exceed five percent (5%) of the Net Cash Operating Revenue (as defined in the New Management Agreement) for the Reorganized Debtor; provided, however, that the Manager agrees, in the event the Plan is confirmed, to defer payment by the Reorganized Debtor of the post Effective Date management fees under the New Management Agreement, in whole or in part, unless and until the Reorganized Debtor's days cash on hand exceeds 120 days for at least 60 consecutive days (after including the effect of payment of any management fees) or

upon such other terms and conditions as may be agreed upon by the Manager in consideration with the reasonable and customary liquidity requirements in the CCRC industry. Once such stability is achieved, the Reorganized Debtor will resume full payment of Manager's five percent (5%) management fee and begin paying down deferred post-Effective Date management fees only to the extent the Reorganized Debtor has sufficient cash to do so while maintaining 120 days cash on hand after giving effect to such payment.

1.56 *New Management Agreement* shall have the meaning set forth in Section 4.3 herein.

1.57  1.53 *New Senior Debt* means in full satisfaction of the Bank Secured Claims, the Banks shall receive new secured notes to be shared *pro rata* in accordance with their Percentage Interests, as such term is defined in the Intercreditor Agreement, which shall be documented in substantially the same form and substance as the Reimbursement Agreements, with the following modifications unless otherwise ordered by the Bankruptcy Court: (a) an aggregate principal amount equal to the Valuation Determination Amount set at the 506(a) Valuation Hearing; (b) interest shall accrue and be paid at a fixed rate for the first ten (10) years, and adjusted thereafter, which such interest rate shall be set by the Bankruptcy Court; (c) the maturity date for all notes shall be thirty-five (35) years following the Confirmation Date, provided, however, that all such notes may be prepaid at any time without penalty; (d) principal payments will be made on a thirty-five (35) year amortization schedule with interest only payable for the first five (5) years of the term; and (e) the Reorganized Debtor's obligations under the New Senior Debt shall be secured by first priority, senior secured liens in substantially all assets held by the Reorganized Debtor; provided, however, that the Health Center Funding, if and when obtained, shall prime the New Senior Debt and be secured by liens senior to the New Senior Debt. A loan agreement, security document(s), intercreditor agreement and any other documents necessary or appropriate to reflect the New Senior Debt shall be filed as a Plan Supplement.

1.58  1.54 *Other Priority Claims* means any Claim entitled to priority under Bankruptcy Code sections 507(a)(4) and 507(a)(5).

1.59  1.55 *Other Secured Claims* means any Secured Claim other than a Bank Secured Claim.

1.60  1.56 *PRS Plan Payment* shall mean Cash, in an amount equal to $250,000.00, funded by Manager on or before the Effective Date, which shall be payable on a *pro rata* basis to holders of any Bank Deficiency Claims in accordance with the treatment provided in Section 3.2.4 of the Plan; provided, however, that in the event that the Banks make the 1111(b) Election, the PRS Plan Payment shall be funded on account of the Allowed Bank 1111(b) Claim.

1.61  1.57 *Person* means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor.

1.62 ~~1.58~~ ***Petition Date*** means January 20, 2016.

1.63 ~~1.59~~ ***Plan*** means this ~~*Third*~~*Fourth* *Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated ~~April 17~~May 18, 2016, as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.64 ~~1.60~~ ***Plan Supplement*** means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, if any, to be filed no later than fourteen (14) days prior to the voting deadline in the Disclosure Statement, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

1.65 ~~1.61~~ ***Priority Tax Claim*** means any Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

1.66 ~~1.62~~ ***Professionals*** means all professionals employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 363 and 1103.

1.67 ~~1.63~~ ***Proof of Claim*** means a proof of Claim filed against the Debtor in the Chapter 11 Case.

1.68 ~~1.64~~ ***Reimbursement Agreements*** means (a) that certain Reimbursement, Credit and Security Agreement by and between Meriter Retirement Services, Inc., as predecessor in interest to the Debtor, and KBC Bank N.V., dated as of March 1, 2008 and relating to the Series 2002A Bonds, the Series 2008A Bonds and the Series 2008C Bonds and (b) that certain Reimbursement, Credit and Security Agreement by and between Meriter Retirement Services, Inc., as predecessor in interest to the Debtor, and Sovereign Bank, dated as of March 1, 2008 and relating to the Series 2008B Bonds, as such Reimbursement Agreements were amended, modified or supplemented from time to time.

1.69 ~~1.65~~ ***Released Parties*** means (a) the Debtor and its member or members, (b) the Reorganized Debtor and its member or members, (c) the Manager in any capacity, (d) members of the Committee, but solely in their capacity as members thereof, and (e) the current and former officers, directors, members, managers, employees, attorneys and advisors, each in their respective capacities as such, of each of the foregoing.

1.70 ~~1.66~~ ***Releasing Parties*** means all Persons who have held, hold or may hold Claims that have been released, discharged or are subject to exculpation pursuant to this Plan.

1.71 ~~1.67~~ ***Reorganized Debtor*** means, as of the Effective Date, the reorganized Debtor entity pursuant to the terms of this Plan.

1.72 ~~1.68~~ ***Residency Agreements*** means those certain residence and care agreements entered into by and between the residents of the Facility and Debtor and any additional documents related thereto.

1.73  1.69 ***Resident Claims*** means any Claim that a resident may hold or assert against the Debtor, its Estate or Assets, including, without limitation, any Claim arising under, related to or in connection with a Residency Agreement.

1.74  1.70 ***Resident Modifications*** shall mean those modifications to the Residency Agreements, solely to the extent described in Section 3.2.5 of the Plan, which are to be effectuated pursuant to the proposed new Residency Agreements, to be assumed by the Reorganized Debtor.

1.75  1.71 ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs, if any, filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.76  1.72 ***Secured Claim*** means any Claim of a Creditor that is secured by property of the Estate, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in Bankruptcy Code section 506(a).  Secured Claim also means a Claim of a creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a).

1.77  1.73 ***Series 2002A ~~Bond~~Bonds*** means the Series 2002A bonds issued by Issuer in the aggregate principal amount of $7,185,000 pursuant to the Series 2002 Bond Indenture.

1.78  1.74 ***Series 2002 Bond Indenture*** means that certain Fifth Supplemental Master Trust Indenture, by and between Meriter Retirement Services, Inc., as predecessor in interest to the Debtor, and Marshall & Ilsley Trust Company National Association.

1.79  1.75 ***Series 2008A Bonds*** means the bonds issued by Issuer in the original aggregate principal amount of $15,210,000 in accordance with the Series 2008 Bond Documents.

1.80  1.76 ***Series 2008B Bonds*** means the bonds issued by Issuer in the original aggregate principal amount of $29,380,000 in accordance with the Series 2008 Bond Documents.

1.81  1.77 ***Series 2008C Bonds*** means the bonds issued by Issuer in the original aggregate principal amount of $6,985,000 in accordance with the Series 2008 Bond Documents.

1.82  1.78 ***Series 2008 Bonds*** means, collectively, the Series 2008A Bonds, the Series 2008B Bonds and the Series 2008C Bonds.

1.83  1.79 ***Series 2008 Bond Documents*** means collectively, the Series 2008 Bond Indentures, the Series 2008 Loan Agreements, the Series 2008 Mortgage, the Series 2008 Letters of Credit and any other agreement of any kind or nature executed in connection

with or otherwise providing, granting or perfecting a Lien in connection with the Series 2008 Bonds (each as may be amended, modified or supplemented from time to time).

1.84 ~~1.80~~ *Series 2008 Bond Indentures* means that certain Amended and Restated Master Trust Indenture by and between the Issuer and the Series 2008 Bond Trustee pursuant to which the Series 2008 Bonds were issued, and those indentures documenting the Series 2008A Bonds, the Series 2008B Bonds and the Series 2008C Bonds.

1.85 ~~1.81~~ *Series 2008 Bond Trustee* means U.S. Bank, National Association as master trustee under the Series 2008 Bond Indenture.

1.86 ~~1.82~~ *Series 2008 Letters of Credit* means those certain letters of credit, known as the Series 2008A Letter of Credit, the Series 2008B Letter of Credit, and the Series 2008C Letter of Credit, issued as security for the Series 2008 Bond Documents.

1.87 ~~1.83~~ *Series 2008 Loan Agreements* means that certain Reimbursement, Credit and Security Agreement between Debtor and Santander Bank, dated as of March 1, 2008, and those certain loan agreements, known as the 2008A Loan Agreement, the 2008B Loan Agreement, and the 2008C Loan Agreement.

1.88 ~~1.84~~ *Series 2008 Mortgages* means that certain Master Mortgage and any additional mortgages securing the obligations arising under the Series 2008 Loan Agreements.

1.89 ~~1.85~~ *Subordinated 510(b) Claims* means (a) any Claim of any Person that is liable with the Debtor on or has secured the Claim of another creditor to the extent that such co-obligor's Claim is for indemnity, contribution, or reimbursement and is not Allowed on or before the Confirmation Date, (b) any Claim for penalties or punitive damages and any other Claim of the type described in section 726(a)(4) of the Bankruptcy Code (and notwithstanding the general inapplicability of Chapter 7 of the Bankruptcy Code), including any lien securing such Claim, or (c) any Claim subordinated under section 510 of the Bankruptcy Code and any lien securing such Claim.

1.90 ~~1.86~~ *Swap Agreements* means those certain ISDA Master Agreements and related documentation, dated as of April 1, 2008, by and between KBC Bank, N.V. and Meriter Retirement Services, Inc., as predecessor in interest to the Debtor.

1.91 ~~1.87~~ *Trustee Fees* means all fees and charges assessed against the Estate of the Debtor under 28 U.S.C. § 1930 of the United States Code.

1.92 ~~1.88~~ *Unexpired Lease* means a lease to which one or more of the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.93 ~~1.89~~ *Valuation Determination Amount* shall mean the aggregate amount of Allowed Bank Secured Claims as set by the Bankruptcy Court at the 506(a) Valuation Hearing.

1.94    1.90 *Voting Record Date* means April 6, 2016, as such date may be extended from time to time.

**B.    Interpretation:  Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

**SECTION 2. TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND TRUSTEE FEES**

2.1    *Administrative Claims*.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims have not been classified and are treated as described herein.  Except as otherwise provided in this Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different treatment than provided under this Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim which has come due for payment under any applicable order or law, as soon as practicable after the later of:  (a) the third Business Day after the Effective Date; (b) the date on which such Person becomes the holder of such an Allowed Administrative Claim; or (c) the date or dates when that Claim is payable by its terms, consistent with past practice and in accordance with past terms.  Allowed Administrative Claims shall only be made in accordance with any Final Order of the Bankruptcy Court.

2.2    *Professional Compensation*.  Professionals or other Persons asserting a Claim for Accrued Professional Compensation for services rendered before the Effective Date must file and serve on the Debtor, the Reorganized Debtor and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Claim for Accrued Professional Compensation no later than 60 days after the Effective Date.  Objections to any Claim for Accrued Professional Compensation must be filed and served on the Reorganized Debtor, the Office of the U.S. Trustee and the requesting party no later than 90 days after the Effective Date.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

2.3    *Priority Tax Claims*.  In accordance with Bankruptcy Code section 1123(a)(1), Priority Tax Claims have not been classified and are treated as described in this Section 2 of this Plan.  Unless otherwise agreed by the holder of an Allowed Priority Tax Claim, any Person holding an Allowed Priority Tax Claim will receive, as determined by the Reorganized Debtor in its sole discretion and in full satisfaction of such Claim:  (a) payment in Cash in full on the later of the Effective Date or the date such Claim becomes an Allowed Claim; or (b) Cash over a period not exceeding five (5) years after the Petition Date, with interest at a rate equal to four percent (4%) per year, payable monthly, in periodic payments, having the value of such Claim as of the Effective Date.

2.4    *Trustee Fees*.  Trustee Fees include all fees and charges assessed against the Debtor's Estate under section 1930 of title 28 of the United States Code.  All Trustee Fees will be paid in full by the Reorganized Debtor as they become due and owing.

## SECTION 3.  CLASSIFICATION AND TREATMENT OF CLAIMS

3.1    *Classification and Specification of Treatment of Claims*.  All Claims, except those described in Section 2, are placed in the following Classes of Claims, pursuant to Bankruptcy Code section 1123(a)(1), which section specifies the treatment of such Classes of Claims and of their impaired or unimpaired status, pursuant to Bankruptcy Code sections 1123(a)(2) and 1123(a)(3).  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan.  Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and distribution.

Subject to all other applicable provisions of this Plan (including its distribution provisions), classified Claims shall receive the treatment set forth below.  This Plan will not provide any distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.  Except as specifically provided in this Plan, this Plan will not provide any distributions on account of a Claim, the payment of which has been assumed by a third party.

3.2    *Classes of Claims*.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Bank Secured Claims | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Bank Deficiency Claims | Impaired | Entitled to Vote |
| 5 | Resident Claims | Impaired | Entitled to Vote |
| 6 | Manager Claims | Impaired | Deemed to Reject |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Subordinated 510(b) Claims | Impaired | Deemed to Reject |

3.2.1   Class 1 — Other Priority Claims.   This Class consists of all Allowed Other Priority Claims that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims still exist as of the Effective Date.  Each Allowed Claim in this Class shall be in a separate subclass.  Unless otherwise agreed by the holder of any Claim in this Class, each Allowed Claim under Bankruptcy Code section 507(a), which has not been satisfied as of the Effective Date, in full and final satisfaction and discharge of and in exchange for each Allowed Other Priority Claim, will receive (i) deferred Cash payments of a value, as of the Effective Date, equal to the holder's Allowed Other Priority Claim or (ii) payment in Cash in full on the later of:  (a) the third (3rd) Business Day after the Effective Date or as soon as reasonably practicable thereafter as determined by the Disbursing Agent; and (b) the date on which there is a Final Order allowing such Claim.  The Debtor estimates that the Allowed Class 1 Claims will be $0 on the Effective Date.

3.2.2   Class 2 — Bank Secured Claims.   This Class consists of all Bank Secured Claims held by the Banks.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date, in full and final satisfaction and discharge of and in exchange for each Allowed Bank Secured Claim, the Banks shall receive the New Senior Debt.  Notwithstanding the foregoing, in the event that both of the Banks, on or before May 2, 2016, make the 1111(b) Election, the Class 2 Claim would be comprised of the "Allowed Bank 1111(b) Claim", and in full and final satisfaction and discharge of an in exchange for each Allowed Bank 1111(b) Claim, the Banks shall receive the 1111(b) Amended and Restated Note, as further described in Section 4.9 herein.

3.2.3   Class 3 — Other Secured Claims.   This Class consists of all Secured Claims other than Bank Secured Claims.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Allowed Other Secured Claim, on the later of the Effective Date and the date such Other Secured Claim becomes Allowed, or as soon as practicable thereafter, each Allowed Other Secured Claim shall have its Other Secured Claim reinstated and otherwise leave unaltered the legal, equitable and contractual rights to which the holder of such Claim is entitled in accordance with section 1124 of the Bankruptcy Code.

3.2.4   Class 4 — Bank Deficiency Claims.   This Class consists of all Bank Deficiency Claims.  The Banks will have a Class 4 Bank Deficiency Claim unless, prior to May 2, 2016, both of the Banks elect, pursuant to § 1111(b)(1)(A)(i) of the Bankruptcy Code and in accordance with the obligations contained in the Intercreditor Agreement, to have

their Allowed Claim receive the treatment set forth in § 1111(b)(2) of the Bankruptcy Code. In the event that the Banks have a Class 4 Bank Deficiency Claim, then, on the Effective Date, such holders of a Class 4 Bank Deficiency Claim shall receive, on the Effective Date and in full and final satisfaction of all Bank Deficiency Claims, a *pro rata* share of the PRS Plan Payment.

3.2.5   <u>Class 5 — Resident Claims</u>.  This Class consists of all Resident Claims.  Except to the extent that a Holder of an Allowed Resident Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Allowed Resident Claim, each Holder of a Resident Claim shall have its Residency Agreement, as modified solely by the Resident Modifications described below, assumed by the Reorganized Debtor.  The Resident Modifications shall consist solely of the following change to the existing Residency Agreement:  *Any entrance deposits refundable to residents pursuant to the Residency Agreements shall be due and payable to residents or their estates, without interest, in the order they are owed, within fourteen (14) days following receipt of sufficient replacement entrance fees to fully fund the refund obligation from the next re-sale(s) and occupancy of any residence(s) within the same contract type*.  Class 5 is impaired by the Plan.  Each holder of a Resident Claim is entitled to vote to accept or reject the Plan.

3.2.6   <u>Class 6 — Manager Claims</u>.  This Class consists of all Manager Claims.  Holders of Manager Claims will receive no property or Distribution under the Plan on account of such Manager Claims.

3.2.7   <u>Class 7 — General Unsecured Claims</u>.  This Class consists of all General Unsecured Claims.   Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive deferred Cash payments of a value, as of the Effective Date, equal to the holder's General Unsecured Claims, payable in two equal installments, without interest, with the first payment to be made on or as soon as practicable after the Effective Date, and the second payment to be made within three (3) months thereafter.

3.2.8   <u>Class 8 — Subordinated 510(b) Claims</u>.  Each holder of a Subordinated 510(b) Claim will not receive any property or Distribution under the Plan on account of such Subordinated 510(b) Claim.

3.3    *Acceptance or Rejection of the Plan*.

3.3.1    <u>Acceptance by an Impaired Class</u>.  In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

3.3.2    <u>Presumed Acceptance of the Plan</u>.  Classes 1 and 3 are unimpaired under this Plan, and Class 1 Other Priority Claims and Class 3 Other Secured Claims are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

3.3.3    <u>Presumed Rejection of the Plan</u>.  Classes 6 and 8 are not entitled to receive or retain any property under this Plan and holders of Class 6 Manager Claims and Class 8 Subordinated 510(b) Claims are, therefore, conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

3.3.4    <u>Voting Class</u>.  Classes 2, 4, 5, and 7 are impaired under this Plan, and holders of Class 2 Bank Secured Claims, Class 4 Bank Deficiency Claims, Class 5 Resident Claims and Class 7 General Unsecured Claims as of the Voting Record Date are entitled to vote to accept or reject this Plan.

## SECTION 4.  MEANS FOR IMPLEMENTATION OF THIS PLAN

4.1    *Sources of Consideration*.  Except as otherwise provided in this Plan, all Cash consideration necessary for the Reorganized Debtor to make payments or distributions pursuant hereto shall be obtained from the Cash on hand of the Reorganized Debtor, including Cash derived from business operations.  Additionally, after the Effective Date, the Reorganized Debtor will create and maintain a reserve, equal to the amount of outstanding refunds owed to the SNF/AL Residents (as defined in the Disclosure Statement), for the future payment of such refunds that will be funded by, to the extent available, Cash held in the Reorganized Debtor's investment accounts that is found not to be subject to the Banks' security interest.  To the extent refunds owed to the SNF/AL Residents remain outstanding and the refunds are not otherwise funded by the Cash held in the investment accounts, the Reorganized Debtor will roll forward any unused portion of the budgeted entrance fee refund amount in any particular year to the following year's budgeted amount; provided, however, that such rolled over budgeted amount shall not exceed the amount of outstanding refunds owed to the SNF/AL Residents as of that year.  As refunds are paid to the SNF/AL Residents, the Reorganized Debtor may reduce the reserve amount by the amount of such refunds paid to the SNF/AL Residents.

4.2    *New Senior Debt*.  On the Effective Date, the Reorganized Debtor shall enter into the New Senior Debt.  The Confirmation Order shall be deemed approval of the New Senior Debt (including the transactions contemplated thereby, any amendments thereto and all actions to be taken, undertakings to be made and obligations to be incurred by the

Reorganized Debtor in connection therewith, whether before or after the Effective Date) which shall be documented in substantially the same form and substance as the Reimbursement Agreements, subject to such modifications as described herein. A loan agreement, security document(s), intercreditor agreement and any other documents necessary or appropriate to reflect the New Senior Debt shall be filed as a Plan Supplement.

4.3    ***New Management Agreement***.    To the extent not entered into prior thereto, on the Effective Date, the Reorganized Debtor and the Manager will enter into the 2016 Affiliate Management and Support Services Agreement (the "***New Management Agreement***"), which shall be documented in substantially the same form as the Current Management Agreement with the sole material modification being the reinstatement of the full Base Management Fee that, beginning on the Effective Date, Manager shall be entitled to a monthly base management fee not to exceed five percent (5%) of the Reorganized Debtor's Net Cash Operating Revenue (as defined in the New Management Agreement) for(the Reorganized Debtor "***Management Fees***"); provided, however, that the Manager agrees, in the event the Plan is confirmed, to defer payment by that the Reorganized Debtor of the post-Effective Date management fees under the New shall defer payment of any such Management Agreement Fees (the "***Deferred Fees***"), in whole or in part, unless and until to the extent the Reorganized Debtor's days cash on hand exceeds 120 days for at least 60 consecutive at the time of payment does not exceed 120 days (after including the effect of payment of any management fees) or upon such other terms and conditions as may be agreed upon by the Manager in consideration with the reasonable and customary liquidity requirements in the CCRC industry.    Once such stability is achieved, the Management Fees) (the "***DCOH Requirement***").    The Reorganized Debtor will resume full payment of Manager's five percent (5%) management fee and begin paying down deferred post-Effective Date management fees shall be required to pay down the Deferred Fees only to the extent the Reorganized Debtor has sufficient cash to do so while maintaining 120 days cash on hand after giving effect to such payment the DCOH Requirement (after including the effect of payment of any Management Fees and Deferred Fees).    Notwithstanding the foregoing, all other fees and expenses due to the Manager under the New Management Agreement, including but not limited to information technology fees and accounting services fees, shall be paid in accordance with the New Management Agreement. Manager and Reorganized Debtor shall document such New Management Agreement in any reasonable manner necessary to contemplate the foregoing.

4.4    ***Vesting of Assets in the Reorganized Debtor***.    Except as otherwise provided in this Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, or as soon as practicable thereafter, all property of the Debtor's Estate including, without limitation, all Causes of Action (except those released pursuant to the Releases by the Debtor) shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens securing the New Senior Debt).    On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business, and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.5 **Corporate Existence**.  Except as otherwise provided herein or in the Corporate Governance Documents or elsewhere in the Plan Supplement, the Reorganized Debtor shall continue to exist after the Effective Date as a separate nonstock nonprofit corporate entity with all the powers of a nonstock nonprofit corporation, pursuant to the applicable law in the jurisdiction in which the Reorganized Debtor is incorporated or formed. At the request of the Committee, the Debtor has agreed to certain changes to its Bylaws that will provide for, among other things, the addition of a second resident director to the Reorganized Debtor's Board of Directors for a period of five (5) years effective as of October 1, 2016.  The Debtor shall file amended Bylaws reflecting all changes agreed to with the Committee as part of the Plan Supplement.  Additionally, after the Effective Date, the Reorganized Debtor has agreed to do the following: (a) provide a copy of audited financial statements to residents of the Facility and schedule an annual meeting with residents of the Facility and a designee of Manager to answer questions related to such financial statements; and (b) provide a quarterly report of outstanding entrance fee refund obligations that details the amount of such refund obligations and the date such refunds came due (the names of residents owed such refunds will not be disclosed).

4.6 **Reorganized Debtor's Governance**.    The existing members of the Debtor's Board of Directors shall continue to be members of the Board of Directors of the Reorganized Debtor.

4.7 **Officers of Reorganized Debtor**.  The existing officers of the Debtor shall continue to be officers of the Reorganized Debtor.  Such officers shall serve in accordance with applicable non-bankruptcy law.

4.8 **Employee Benefits**.  Except as otherwise provided herein, on and after the Effective Date, the Reorganized Debtor may: (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance and accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtor who served in such capacity at any time and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising before the Petition Date; provided, however, that the Debtor's or the Reorganized Debtor's performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program or plan that has expired or been terminated before the Effective Date, or restore, reinstate or revive any such benefit or alleged entitlement under any such policy, program or plan.  Nothing herein shall limit, diminish or otherwise alter the Reorganized Debtor's or the Debtor's defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans.

4.9 **1111(b) Election**.  The Holders of the Allowed Bank Secured Claim shall have until On May 2, 2016 to make, the Banks made the 1111(b) Election.  IfAs a result of the 1111(b) Election is made on or before such date, the Class 2 Claim would be, Class 2 is comprised of the "Allowed Bank 1111(b) Claim," which would provideprovides the Banks with deferred cash payments equal to the net present value of the Valuation Determination

Amount.  In such event,  total amount of the Allowed Bank 1111(b) Claim, less the total amount of Cash held in the Debtor's debt service reserve accounts that may be drawn by the Banks on or after the Effective Date.  The Banks shall retain the liens that secure the Allowed Bank 1111(B) Claim.  As a result of the 1111(b) Election, no Class 4 Bank Deficiency Claims would exist.  Upon such 1111(b) Election, the The Allowed Bank 1111(b) Claim will be evidenced by the 1111(b) Amended and Restated Note, which will be effective on the Effective Date and incorporate the terms of the existing notes as further modified as more fully described in Article V.D of the Disclosure Statement .  The terms of repayment of the 1111(b) Amended and Restated Note shall be reflected in a Credit and Security Agreement that is in substantially the same form as the one filed as a Plan Supplement.

4.10    *Restructuring Transactions*.  On the Effective Date or as soon as reasonably practicable thereafter, the Debtor and the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Persons may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable Persons agree; (3) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

4.11    *Corporate Action*.  Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects, including all actions contemplated by this Plan (whether to occur before, on or after the Effective Date).  All matters provided for in this Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor or the Reorganized Debtor.

On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as the case may be, and any and all other agreements, documents, securities and instruments relating to the foregoing.

4.12    *Section 1146 Exemption from Certain Taxes and Fees*.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to this Plan, shall not be subject to any stamp tax or other similar

tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by of this Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under this Plan.

4.13    ***Preservation of Causes of Action of the Debtor***.  In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Releases by the Debtor and exculpation provisions provided in this Plan), the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.  No Person may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which the Debtor or the Reorganized Debtor has released any Person or Person on or before the Effective Date (including pursuant to the Releases by the Debtor or otherwise), the Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in this Plan.  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or consummation of this Plan.

## SECTION 5. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    ***Assumption and Rejection of Executory Contracts and Unexpired Leases***.  Except as otherwise provided in this Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, each of the Executory Contracts and Unexpired Leases of the Debtor shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease:  (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to reject filed on or before the Effective

Date; or (4) is identified as an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan Supplement before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in this Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding anything to the contrary in this Plan, the Debtor or the Reorganized Debtor, as applicable, reserve the right to alter, amend, modify or supplement the list of Executory Contracts and Unexpired Leases identified in the Plan Supplement at any time before the Effective Date. After the Effective Date, the Reorganized Debtor shall have the right to terminate, amend or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

5.2     ***Claims Based on Rejection of Executory Contracts or Unexpired Leases***.  All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; provided, that any such Rejection Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b)(6). Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtor or the Reorganized Debtor, the Estate or its property without the need for any objection by the Reorganized Debtor or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as Class 7 General Unsecured Claims against the Debtor and shall be treated in accordance with this Plan.

5.3     ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases***.  Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under this Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under

any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

5.4    ***Insurance Policies***.  Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Reorganized Debtor if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption and assignment of each of the Insurance Policies.

5.5    ***Modifications, Amendments, Supplements, Restatements or Other Agreements***.  Unless otherwise provided, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith, unless such Executory Contract or Unexpired Lease has been previously assumed by the Debtor or either of them.

5.6    ***Reservation of Rights***.  Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has or have, as the case may be, any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

5.7    ***Contracts and Leases Entered Into After the Petition Date***.  Notwithstanding any other provision in this Plan, contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or the Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## SECTION 6.  PROVISIONS GOVERNING DISTRIBUTIONS

6.1    ***Timing and Calculation of Amounts to Be Distributed***.  Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such

a Claim becomes an Allowed Claim, on the next Distribution Date or as soon as reasonably practicable thereafter), each holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Plan.  Except as otherwise provided herein, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

6.2    ***Disbursing Agent***.  Except as otherwise provided in this Plan, all distributions under this Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other Person designated by the Reorganized Debtor as a Disbursing Agent on the Effective Date.

6.3    ***Rights and Powers of Disbursing Agent***.  The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

6.4    ***Payments and Distributions on Disputed Claims***.  Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.5    ***Special Rules for Distributions to Holders of Disputed Claims***.  Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

6.6    ***Delivery of Distributions in General***.  Except as otherwise provided in this Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date by the Disbursing Agent.  Distributions to holders of Allowed Claims will be made at the address of each such holder as set forth in the Debtor's books and records.  Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in this Plan.  None of the Debtor, the Reorganized Debtor and the applicable Disbursing Agent shall incur

any liability whatsoever on account of any distributions under this Plan except for gross negligence, willful misconduct or fraud.

6.7    *Undeliverable Distributions and Unclaimed Property*.  In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable Distribution Date.  After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property shall be discharged and forever barred.

6.8    *Withholding and Reporting Requirements*.  In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements.

6.9    *Setoffs*.  Except as set forth herein, the Debtor and the Reorganized Debtor may withhold (but not set off except as set forth below) from the distributions called for under this Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such holder, except as specifically provided herein.

6.10    *Insurance Claims*.  No distributions under this Plan shall be made on account of Allowed Claims until the holder of such Allowed Claim has exhausted all remedies with respect to the Debtor's Insurance Policies.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may

be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

6.11    *Applicability of Insurance Policies*.    Except as otherwise provided in this Plan, distributions to holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy.    Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Person may hold against any other Person, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

6.12    *Allocation of Distributions between Principal and Unpaid Interest*. With the exception of distributions on account of the Bank Secured Claims, which shall be treated as provided in Class 2, to the extent that any Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for U.S. federal income tax purposes, be allocated on the Debtor's books and records to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the accrued but unpaid interest.

**SECTION 7. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

7.1    *Prosecution of Objections to Claims*.    The Debtor (before the Effective Date) or the Reorganized Debtor (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under this Plan.    From and after the Effective Date, the Debtor and the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.    The Debtor reserves all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

7.2    *Allowance of Claims*.    Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), the Reorganized Debtor after the Effective Date will have and retain any and all rights and defenses held by the Debtor with respect to any Claim as of the Petition Date.    All claims of any Person against the Debtor shall be disallowed unless and until such Person pays, in full, the amount it owes each suchto the Debtor.

7.3    *Distributions after Allowance*.    On the Distribution Date following the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

7.4    *Estimation of Claims*.    The Debtor (before the Effective Date) or the Reorganized Debtor (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the

Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Person, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or the Reorganized Debtor (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the objection, estimation, settlement and resolution procedures set forth in this Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## SECTION 8. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

8.1 ***Compromise and Settlement of Claims and Controversies***. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and holders of Claims and is fair, equitable and reasonable. In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against them and Causes of Action against other Persons.

8.2 ***Releases by the Debtor***. Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, the Estate or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor, the Reorganized Debtor or the Issuer, the subject matter of, or the transactions or events giving

rise to, any Claim that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims before or during the Debtor's Chapter 11 Case, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "***Debtor Released Claims***"), other than Debtor Released Claims against a Released Party arising out of or relating to any act or omission of that party constituting willful misconduct or gross negligence.

        8.3    ***Releases by Holders of Claims***.  As of the Effective Date and except as set forth in this Plan or the Plan Supplement, each holder of a Claim who votes to accept the Plan and does not mark such ballot to indicate their refusal to grant the release provided for in this paragraph, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtor, the Reorganized Debtor and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor, the Reorganized Debtor or the Issuer, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims before or during the Chapter 11 Case, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents, including without limitation, the New Senior Debt (collectively, "***Released Claims***"), other than Released Claims against the Debtor, the Reorganized Debtor, or a Released Party arising out of or relating to any act or omission of that party constituting willful misconduct or gross negligence; provided, however, that this Plan shall not release the Debtor, the Reorganized Debtor and the Released Parties from any Cause of Action held by a current resident under his or her Residency Agreement or on account of an alleged tort claim arising from an injury sustained by such resident or invitee at the Facility, or a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act of 1933 (as now in effect or hereafter amended), or other securities laws of the United States or any domestic state, city or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security.

        8.4    ***Exculpation***.  Except as otherwise specifically provided in this Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, obligation, cause of action or liability for any Exculpated Claim, except for gross negligence or willful misconduct (to the extent such duty is imposed by applicable non-bankruptcy law), but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their

duties and responsibilities pursuant to this Plan.  The Debtor and the Reorganized Debtor (and each of their respective affiliates, agents, directors, members, officers, employees, advisors and attorneys) have, and upon Confirmation of this Plan shall be presumed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law with regard to the solicitation and distribution of securities pursuant to this Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

8.5    ***Discharge of Claims***.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the distributions, rights and treatment that are provided in this Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such Claim, debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such Claim, debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim has accepted this Plan.  Except as otherwise provided herein, any default by the Debtor or its affiliates with respect to any Claim that existed before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the Effective Date occurring, except as otherwise expressly provided in this Plan.

8.6    ***Injunction***.  FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATE OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.

THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

8.7    ***Term of Injunctions or Stays***.  Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or

the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

8.8  ***Protection against Discriminatory Treatment***.  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor or another Person with whom the Reorganized Debtor has or have been associated, solely because the Debtor has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

8.9  ***Release of Liens***.  Except as otherwise provided in this Plan, including, but not limited to, Class 2 of this Plan, the New Senior Debt, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.  For the avoidance of doubt, except as otherwise provided in this Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## SECTION 9. CONDITIONS PRECEDENT TO CONFIRMATION OF THIS PLAN AND THE EFFECTIVE DATE

9.1  ***Conditions Precedent to Confirmation***.  It shall be a condition to Confirmation of this Plan that each of the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of this Plan.

(a)  The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtor, approving the Disclosure Statement with respect to this Plan and the solicitation of votes thereon as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law.

(b)  The Confirmation Order (a) shall be, in form and substance, reasonably acceptable to the Debtor (b) shall include a finding by

the Bankruptcy Court that the Reorganized Debtor's entry into the New Senior Debt will be authorized and (c) shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code.

(c)     The Bankruptcy Court shall have held the 506(a) Valuation Hearing.

9.2     ***Conditions Precedent to the Effective Date***.  It shall be a condition to the Effective Date that each of the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of this Plan.

(a)     The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtor as contemplated herein in form and substance reasonably acceptable to the Debtor.

(b)     The Confirmation Order, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court and shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code.

(c)     All of the schedules, documents, supplements and exhibits to this Plan shall have been filed in form and substance reasonably acceptable to the Debtor.

(d)     All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

9.3     ***Waiver of Conditions***.  The conditions to confirmation and consummation of this Plan set forth herein may be waived at any time by the Debtor; provided, however, that the Debtor may not waive entry of the Orders approving the Disclosure Statement and confirming this Plan.

9.4     ***Effect of Failure of Conditions***.  If the consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any holders of Claims or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any holders or any other Person in any respect.

## SECTION 10.                MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

10.1   ***Modification and Amendments***.   Except as otherwise specifically provided herein, the Debtor reserves the right to modify this Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.   Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, the Debtor expressly reserve its rights to alter, amend or modify materially this Plan, one or more times, after confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify this Plan or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.   Any such modification or supplement shall be considered a modification of this Plan and shall be made in accordance with this Plan.

10.2   ***Effect of Confirmation on Modifications***.   Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

10.3   ***Revocation or Withdrawal of this Plan***.   The Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw this Plan before the Effective Date. If the Debtor revokes or withdraws this Plan, or if Confirmation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall:   (a) constitute a waiver or release of any Claims; (b) prejudice in any manner the rights of the Debtor or any other Person; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

## SECTION 11.                RETENTION OF JURISDICTION

11.1   Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of or related to, the Chapter 11 Case and this Plan including jurisdiction to:

(a)   allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to:  (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including rejection Claims, cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying or supplementing, after the Effective Date, any Executory Contracts or Unexpired Leases on the list of Executory Contracts and Unexpired Leases to be assumed or rejected; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide or resolve any and all matters related to any Cause of Action;

(g)     adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)     enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(i)     resolve any avoidance or recovery actions under sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

(j)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the consummation, interpretation or enforcement of this Plan or any Person's obligations incurred in connection with this Plan;

(k)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain

interference by any Person with consummation or enforcement of this Plan;

(l)   resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(m)   enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)   determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the Disclosure Statement;

(o)   adjudicate any and all disputes arising from or relating to distributions under this Plan;

(p)   consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q)   determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(r)   hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(s)   hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(t)   hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

(u)   enforce all orders previously entered by the Bankruptcy Court;

(v)      hear any other matter not inconsistent with the Bankruptcy Code; and

(w)      enter an order concluding or closing the Chapter 11 Case.

## SECTION 12.        MISCELLANEOUS PROVISIONS

12.1    ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor and any and all holders of Claims (irrespective of whether such Claims are deemed to have accepted this Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each Person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

12.2    ***Additional Documents***.  On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor or the Reorganized Debtor, as applicable, and all holders of Claims receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

12.3    ***Dissolution of the Committee***.  On the Effective Date, the Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Case.

12.4    ***Reservation of Rights***.  Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims before the Effective Date.

12.5    ***Successors and Assigns***.  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

12.6    ***Votes Solicited in Good Faith***.  Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of securities offered and sold under

this Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on this Plan.

12.7    ***Closing of Chapter 11 Case***.    The Debtor or the Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

12.8    ***Notices***.    All notices or requests in connection with this Plan shall be in writing and given by mail addressed to:

DLA PIPER LLP (US)
Attn:  Thomas R. Califano
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

– and –

SWEET DEMARB LLC
Attn: Rebecca R. DeMarb
One North Pinckney Street, Suite 300
Madison, WI 53703
Telephone:  (608) 310-5500
Facsimile:  (608) 310-5525

      All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Chapter 11 Case.  Any such holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtor.

      12.9   ***Headings***.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

      12.10   ***Severability***.  If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

      12.11   ***Validity and Enforceability***.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

12.12 **Plan Supplement**.  Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such a Plan Supplement.

12.13 **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Wisconsin, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the restructuring transactions consummated or to be consummated in connection therewith.

12.14 **Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b)**.  The Debtor requests entry of a Confirmation Order under Bankruptcy Code section 1129(a) and, to the extent necessary, Bankruptcy Code section 1129(b).

Dated: ~~April 17~~May 18, 2016                    Respectfully submitted,

                                    **Capitol Lakes, Inc.**

                                    By:    */s/      Tim Conroy*
                                           Name: Tim Conroy
                                           Title: Executive Director

| Summary report: Litéra® Change-Pro TDC 7.5.0.155 Document comparison done on 5/18/2016 11:07:44 PM | |
|---|---|
| **Style name:** DLAPiper | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:**iw://EASTDMS/EAST/122989029/7 | |
| **Modified DMS:** iw://EASTDMS/EAST/122989029/8 | |
| **Changes:** | |
| Add | 149 |
| Delete | 139 |
| Move From | 3 |
| Move To | 3 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 294 |