**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CAPITOL LAKES, INC.,[1] | § | Case No. 16-10158 |
| | § | |
| Debtor. | § | Hon. Robert D. Martin |

**MOTION OF SANTANDER BANK, N.A. AND
KBC BANK N.V. FOR STAY PENDING APPEAL**

Santander Bank, N.A. ("**Santander**") and KBC Bank N.V. ("**KBC**" and together with Santander, the "**Banks**"), by and through their undersigned counsel, file this motion (this "**Motion**") for a stay pending appeal of the Court's order (the "**Confirmation Order**"), entered June 27, 2016 [Dkt. No. 413], confirming the *Debtor's Fifth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Fifth Amended Plan**") [Dkt. No. 375] filed by Capitol Lakes, Inc., the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"). In support of this Motion, the Banks respectfully represent as follows:

**I.**

**PRELIMINARY STATEMENT**

1.  The Banks have appealed the Court's Confirmation Order. By this Motion, the Banks seek to protect their rights to obtain effective relief in that appeal. Absent a stay of confirmation, the Debtor will commence implementing the Fifth Amended Plan, which risks a determination by an appellate court that it is no longer prudent to upset the Confirmation Order on appeal (under what some courts outside the Seventh Circuit describe as the doctrine of

---

[1] The debtor in this chapter 11 case, along with the last four digits of its taxpayer identification number, is: Capitol Lakes, Inc. (2320). The mailing address of the debtor, solely for purposes of notices and communications, is: 333 W. Main Street, Madison, WI 53703.

1

"equitable mootness"). That risk, the realization of which would preclude appellate review of a plan that substantially and negatively affects the Banks' rights and economic interests, coupled with the lack of harm arising from the issuance of a stay to any third-party, establish the grounds upon which this Motion should be granted.

## II.

## JURISDICTION

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Western District of Wisconsin, dated June 12, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## BACKGROUND

4. On April 17, 2016, the Debtor filed the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Third Amended Plan**") and the *Disclosure Statement for Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Disclosure Statement**"). Dkt. Nos. 305 and 306.

5. On April 20, 2016, the Court entered an order that, among other things, approved the Disclosure Statement and scheduled a hearing to confirm the Third Amended Plan for June 22, 2016 (the "**Confirmation Hearing**"). Dkt. No. 312.

6. On May 18, 2016, the Debtor materially modified the Third Amended Plan by filing the *Debtor's Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Fourth Amended Plan**"). Dkt. No. 338.

7. On May 2, 2016, the Banks elected application of Section 1111(b)(2) of the Bankruptcy Code to their claims (the "**1111(b) Election**"). Dkt. No. 329.

8. The Banks subsequently voted their secured claims against the Fourth Amended Plan and filed objections to confirmation. Dkt. Nos. 357, 358 and 371.

9. On the evening of June 15, 2016, the Debtor filed, among other documents, the Fifth Amended Plan and the *Declaration of George D. Pillari in Support of Feasibility Projections* (the "**Pillari Declaration**") Dkt. No. 377.

10. On June 22 and 23, the Court held the Confirmation Hearing, and on June 27, 2016, the Court issued a Memorandum Decision and entered the Confirmation Order, confirming the Fifth Amended Plan. Dkt. Nos. 412 and 413.

11. On July 1, 2016, the Banks filed a notice of appeal from the Confirmation Order. Dkt. No. 414.

### IV.

### ARGUMENT

12. A party appealing an order of the bankruptcy court may move the court to issue a stay of its order or otherwise suspend proceedings in the case during the pendency of the appeal to protect the rights of all parties in interest. Fed. R. Bankr. P. 8007(a) and (e). When deciding whether to issue a stay under Bankruptcy Rule 8007, courts consider the same factors that are required for the issuance of a preliminary injunction. *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). To determine whether to grant a stay, courts in the Seventh Circuit consider (i) the moving party's likelihood of success on the merits, (ii) the irreparable harm that may result to each side if the stay is either granted or denied in error, and (iii) whether the public interest favors granting or denying the requested stay. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007).

13. As with a motion for a preliminary injunction, a "sliding scale" approach applies. Although a moving party must generally demonstrate that it has a likelihood of success on the merits, "[t]he more the balance of harms tips in favor of an injunction, the lighter the burden on the party seeking the injunction to demonstrate that it will ultimately prevail." *Grote v. Sebelius*, 708 F.3d 850, 853 n.2 (7th Cir. 2013). *See also, Cavel*, 500 F.3d at 547. Here, the scales tip decisively in favor of a stay.

### A. Balance of Harm

14. The Banks risk substantial, irreparable injury if a stay is not entered. If the Debtor is free to effectuate the Fifth Amended Plan and distribute estate assets prior to the adjudication of the Banks' appeal, the Banks' appeal may become subject to potential prudential dismissal. *See generally In re UNR Indus*, 20 F.3d 766, 769 (7th Cir. 1994) ("We ask not whether this case is moot, 'equitably' or otherwise, but whether it is prudent to upset the plan of reorganization at this late date."). If denial of the Banks' right to appellate review were to occur, the result, among other things, would be to let stand what the Banks believe are reversible errors that:

- Subject the Banks to a materially below-market interest rate for the next 13 years;

- Leave the Banks with a payment stream that carries with it a substantial risk of payment default, and that has a net present value of less than the $36 million to which, at a minimum, they are entitled; and

- Deprive the Banks of financial and other covenants critically necessary to manage and mitigate the risks associated with the length of the payment stream contemplated by the Fifth Amended Plan.

Moreover, dismissal of the appeal of the Confirmation Order on prudential grounds would potentially lead to the same result on the Banks' separate appeal of a valuation determination that the Banks believe substantially undervalues their collateral and, correspondingly, reduces the net present value to which they are entitled.

4

15. In the aggregate, the economic impact of these factors is millions of dollars. Where, as here, "the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." *Fox Sports Net West 2, LLC v. L.A. Dodgers LLC (In re L.A. Dodgers LLC),* 465 B.R. 18, 36 (D. Del. 2011) (finding risk of equitable mootness supported issuance of stay) (citation omitted).

16. In contrast to the harm that the Banks may incur in the absence of a stay, other parties will not bear any undue burden if a stay pending appeal is granted. Any alleged harm resulting from a stay of confirmation would come only in the form of delay.

17. Specifically, although a stay of the Confirmation Order concededly would result in a delay in the Debtor's exit from Chapter 11 and delay implementation of the Fifth Amended Plan, that delay would cause no harm to the Debtor. The Debtor contends that it has been operating quite successfully during the course of this case. Indeed, as Mr. Pillari was quick to point out, the far rosier projections presented to creditors on June 15, 2016 as part of the Pillari Declaration were justified on the basis of just how well the Debtor has been performing since the filing of this Chapter 11 Case. Moreover, if a stay is granted, the Debtor will continue to have the benefit of paying no debt service on the amounts it owes to the Banks. Continuing in bankruptcy while the Banks prosecute their appeal thus would impose no burden on the Debtor.

18. A stay also would cause no significant harm to other parties in interest. There are no transactions that are dependent upon plan confirmation, or that would be jeopardized if plan confirmation was delayed. For example, to the extent that residents wish to implement the amendment to the resident agreements contemplated by the Fifth Amended Plan, that can be separately negotiated and effected with Court approval outside of any plan of reorganization. Similarly, the Debtor's projections do not reflect that a delay in making the approximately

$440,000 distribution to unsecured creditors will put the ability of the Debtor to make such distribution at risk.

19.     In short, the Banks are at risk for millions of dollars in the absence of a stay.  No other party would suffer material harm if a stay is granted.  The equities therefore decisively favor the Banks and the entry of a stay of the Confirmation Order pending appeal.

### B.     Likelihood of Success on the Merits

20.     As indicated, although a moving party must generally demonstrate that it has a likelihood of success on the merits, "[t]he more the balance of harms tips in favor of an injunction, the lighter the burden on the party seeking the injunction to demonstrate that it will ultimately prevail." *Grote,* 708 F.3d at 853 n. 2.

21.     Here, although the Court found against the Banks on certain legal issues raised, such as standing to raise the absolute priority rule, artificial impairment, and the inequity of subjecting the Banks to a balloon payment dependent on a speculative sale or refinancing, the Banks had case support for each of their positions.  For example:

- **Absolute Priority Rule**: *In re Castleton Plaza, LP (Castleton I)*, 707 F.3d 821 (7th Cir. 2013), and *In re Castleton Plaza, LP (Castleton II)*, 561 F. App'x 561 (7th Cir. 2014);

- **Artificial Impairment**: *Windsor on the River Assocs., Ltd. v. Balcor Real Estate Fin. (In re Windsor on the River Assocs.)*, 7 F.3d 127, 130 (8th Cir. 1993) (refusing to approve plan that sought to impair trade creditors by waiting until two months after confirmation to pay such claims in full); and

- **Speculative Balloon Payment**: *See, e.g., In re Lakeside Global II, Ltd.*, 116 B.R. 499, 502 (Bankr. S.D. Tex. 1989) (finding that plan did not meet requirements of

6

Section 1129(b)(2)(A)(i)(II) where "[t]he proponents rely upon a future sale or refinancing in order to make a large balloon payment at the termination of the plan period to fully pay the lienholders.").

22. On contested factual issues, such as interest rate, feasibility, and net present value, although the Court ultimately decided against the Banks, the Banks had competent expert testimony supporting their contentions. More importantly, the Banks' expert testified, and the Banks believe that the Debtor's expert conceded, that, without application of the debt service reserve fund to the $36 million net present value to which the Banks are, at a minimum, entitled -- *which the Debtor and the Court acknowledged is not how such fund is applied* -- the Fifth Amended Plan does not provide a payment stream with a net present value of $36 million.

23. In short, there is nothing frivolous about the Banks' appeal, and whatever the full measure of the Banks' chances of success, those chances, when coupled with the balance of the harm discussed above, are sufficient to justify imposing a stay.

C. **The Public Interest**

24. "The public interest lies in a correct application" of the law. *See Americans United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990). This bankruptcy case is largely a two-party dispute concerning the Debtor's ability to cram-down the Banks' $57.6 million secured claim -- a claim that dwarfs the $440,000 contemplated to be distributed to all general unsecured creditors. This case has had a material negative impact only on the Banks. The public interest thus is best served by permitting an appellate determination regarding whether that result was or was not imposed in accordance with law.

**D.    The Banks Should Not Be Required to Post a Bond**

25.    Bankruptcy Rule 8007 allows the Court to condition a stay pending appeal on the filing of a bond. The purpose of such a bond "is to protect the adverse party from potential losses resulting from the stay." *In re United Merchs. & Mfrs., Inc.,* 138 B.R. 426, 430 (D. Del. 1992). The Court has "wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Cont'l Oil Co. v. Frontier Ref. Co.,* 338 F.2d 780, 782 (10th Cir. 1964) (footnote omitted). Generally a bond is only necessary where the stay is "likely to cause harm by diminishing the value of an estate or endangering [the non-moving parties'] interest in the ultimate recovery." *See, e.g., ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),* 361 B.R. 337, 368 (Bankr. S.D.N.Y. 2007) (internal quotations omitted).

26.    Here, the estate will not be diminished by a stay (indeed, it will be augmented by a delay in making payments to the Banks), nor will the ultimate recovery by general unsecured creditors be put at risk (the Debtor's latest projections do not reflect an inability to make the $440,000 payment to unsecured creditors in the future). Under these circumstances, a bond should not be required. *See United Merchs.,* 138 B.R. at 430 (stay of further distributions pursuant to confirmed chapter 11 plan would not be conditioned upon a bond because the debtor would not suffer any loss as a result of the stay pending appeal).

## VI.

## NOTICE

27.    Notice of this Motion has been provided to: (i) counsel for the Debtor; (ii) counsel for Pacific Retirement Services, Inc.; (iii) the Office of the United States Trustee for the Western District of Wisconsin; and (iv) counsel for the official committee of unsecured creditors.

The Banks submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

WHEREFORE, the Banks respectfully request that the Court (i) issue a stay of the Confirmation Order until such time as the Banks' appeal is adjudicated on a final basis and (ii) grant such other and further relief as the Court deems proper.

| | |
|---|---|
| Dated: July 1, 2016 | Dated: July 1, 2016 |
| **DUANE MORRIS LLP** | **BALLARD SPAHR LLP** |
| By: */s/ John R. Weiss* <br> John R. Weiss <br> 190 South LaSalle Street, Suite 3700 <br> Chicago, IL 60603-3433 <br> Tel: (312) 499-0148 <br> Email: jrweiss@duanemorris.com | By: */s/ Vincent J. Marriott, III* <br> Vincent J. Marriott, III <br> 1735 Market Street, 51st Floor <br> Philadelphia, PA 19103 <br> Tel: (215) 864-8236 <br> Email: marriott@ballardspahr.com |
| *Lead counsel for Santander Bank, N.A.* | *Lead counsel for KBC Bank N.V.* |

Dated: July 1, 2016

**WHYTE HIRSCHBOECK DUDEK S.C.**

By: */s/ Daniel J. McGarry*
Daniel J. McGarry
P.O. Box 1379
Madison, WI 53701-1379
Tel: (608) 234-6046
Email: dmcgarry@whdlaw.com

*Local Counsel to Santander Bank, N.A. and KBC Bank N.V.*